LEAGUE *v.* CHURCHILL *et al.*

1. Under the act of 1894 (Ga. Laws 1894, p. 103, Code of 1910, §§ 3873-3880) a foreign will can be probated, and Georgia property willed thereunder can be administered, only by such resident executor as may be named therein, or, if none, by a resident administrator with the will annexed, appointed at the instance of any heir, legatee, distributee, devisee, or creditor of the testator. The purpose and effect of the act of 1894 is not only to require the domestic probate of foreign wills before Georgia property can be administered thereunder, but also to prohibit such probate and the administration of Georgia property willed thereunder by any person other than a resident executor or a resident administrator with the will annexed, selected and appointed as therein provided, to the exclusion of "the executor therein named or any administrator with the will annexed appointed elsewhere," referred to . in section 9 of the act.

2. The ruling in the preceding headnote sufficiently answers the remaining questions certified by the Court of Appeals, which are as follows: (2) "Or is it true that under the concluding provision of section 2 of the act of 1878 (Ga. Laws 1878, p. 146) a non-resident executor of a foreign will, who has duly qualified as such in the State of its execution, is entitled to probate the will in Georgia, as required by the act of 1894, and thereafter, under the authority of section 9 of the act of 1894 (Code of 1910, § 3880), to proceed as a foreign executor to manage and control the Georgia property?" (3) "Or is it true that under the concluding provision of section 2 of the act of 1878, and subsequent acts providing for the granting of domestic letters testamentary to foreign executors, a non-resident executor of a foreign will, who has duly qualified as such in the State of its execution, is entitled to probate the will in Georgia, as required by the act of 1894, and thereafter, upon receiving domestic letters testamentary, to administer the Georgia property by virtue of such qualification?"

No. 5571. MARCH 18, 1927.

Questions certified by Court of Appeals (Case No. 17160).

*Wright & Jackson,* for plaintiff.

*Callaway & Howard, W. H. Fleming, Hamilton Phinizy,* and J. S. Bussey Jr., for defendants.

GILBERT, J. 1. The Court of Appeals certified the following question: "Under the act of 1894 (Ga. Laws 1894, p. 103, Code of 1910, §§ 3873-3880) can a foreign will be probated, and Geor-

Executors and Administrators, 24 C. J. p. 1115, n. 35; p. 1116, n. 62 New.

gia property willed thereunder be administered, only by such resident executor as may be named therein, or, if none, by a resident administrator with the will annexed, appointed at the instance of any heir, legatee, distributee, devisee, or creditor of the testator? In other words, is the purpose and effect of the act of 1894 not only to require the domestic probate of foreign wills before Georgia property can be administered thereunder, but does it also prohibit such probate and the administration of Georgia property willed thereunder by any person other than a resident executor or a resident administrator with the will annexed, selected and appointed as therein provided, to the exclusion of 'the executor therein named or any administrator with the will annexed appointed elsewhere,' referred to in section 9 of the act?" It may be proper to remark at the outset that we assume that the question propounded has reference to the administration of an estate consisting of real estate. It is generally admitted that personalty has no fixed legal situs. It follows the domicile of the owner. At his death the administrator or executor becomes invested with the title to all personal property of the deceased.

"At common law non-residence of the testator's appointee does not disqualify him as executor; even alien enemies have been allowed to maintain actions as executors. The same rule prevails in many American States; but in Arkansas, (probably in Indiana,) Illinois, Kansas, Kentucky, Missouri, Nebraska, New Mexico, Oregon, Pennsylvania, and West Virginia, non-residents of the State are not permitted to act as executors. . . In other States, also, non-residents are discriminated against in respect of the office of executor." 2 Woerner on Administration, § 230; 11 R. C. L. 43, 45, and cit.; 23 C. J. 1025; 11 Am. & Eng. Enc. Law, 753; In re Estate Munroe, Ann. Cas. 1913B, 1161, 1165, note (161 Cal. 10, 118 Pac. 242); Bradley v. Harden, 73 Ala. 70 (5); Fulgham v. Fulgham, 119 Ala. 403 (24 So. 851); Re Mulford, 217 Ill. 242 (75 N. E. 345, 1 L. R. A. (N. S.) 341, 108 Am. St. R. 249, 3 Ann. Cas. 986); Breen v. Kehoe, 142 Mich. 58 (105 N. W. 28, 113 Am. St. R. 558, 1 L. R. A. (N. S:) 349); Re Estate Augusta Meier, 165 Cal. 456 (132 Pac. 764, 48 L. R. A. (N. S.) 858, note, Ann. Cas. 1914D, 121). "As a general thing, there is no difference between what disqualifies for executorship and what for administratorship, but this is not invariably true.

Though both require legal sanction, an administrator derives his authority solely from the law, while an executor has the additional sanction of claiming in right of choice by the testator himself, whose property is to be administered. It results from this that whatever disqualifies one from becoming executor likewise disqualifies as administrator; but the converse is not always the case, for in some instances considerations that would be sufficient to justify a refusal to appoint one as administrator may not be sufficient to deny letters to one named as executor." 2 Woerner on Administration, § 229a. Our Code deals with the subject of foreign wills in a separate article from that dealing with domestic wills. The provisions of the article dealing with foreign wills must take precedence over all conflicting provisions in the law of the subject found in other parts of the Code. "The right of administration is not inherent, but statutory. But aside from the statutory regulations, which in every State determine what persons are entitled to the administration, and which of course must be observed in appointing an administrator to office, the discretion vested in probate courts in this respect is to be governed by well-known general principles." 2 Woerner on Administration, § 235. "The law of descent and devise being the creation of the statute law, the power which creates may regulate and may impose conditions or burdens on a right of succession to the ownership of property to which there has ceased to be an owner because of death, and the ownership of which the State then provides for by the law of descent or devise." Kochersperger *v.* Drake, 167 Ill. 122 (47 N. E. 321, 41 L. R. A. 446). "And if a State may deny the privilege altogether, it follows that, when it grants it, it may annex to the grant any conditions which it supposes to be required by its interests or policy." Mager *v.* Grima, 8 How. 490, 494 (12 L. ed. 1168); and see Child *v.* Gratiot, 41 Ill. 357.

Counsel for the non-resident executor, with commendable industry, have collected and cited all of the Georgia statutes bearing upon the subject. Where these statutes are in derogation of the common law, they will be construed strictly and confined to the clear legislative intent. The intent is to be ascertained under well-known rules of construction. The first legislation on the subject was in the act of 1805: "No letters testamentary or of administration shall be granted to any person or persons who is

or are not a citizen or citizens of the United States, residing in the State of Georgia." Acts 1805, pp. 37, 38, Clayton's Comp. 268, 269, Cobb's Digest, 283, Civil Code (1910), §§ 3884, 3941. This act was under discussion soon after the origin of this court, but the question then involved was not precisely the same as the question now before us. There the question was whether an executor who was fully qualified at the time letters were granted to him, but who afterwards removed from the State, became, by reason of such removal, disqualified. The court held that such removal did not disqualify the executor and did not revoke the letters testamentary granted him. Judge Lumpkin, in delivering the opinion, severely criticised the legislation contained in the act of 1805. He gave an account of what had been related to him as its origin, and declared: "The propriety of such an act, unprecedented as it is, as applicable to administrators, I am willing to concede. But for myself, I esteem it utterly incompatible with the sacred right of every citizen, not only to dispose of his property by will, but to select, at his own discretion, the executor to whom he will trust the management of his affairs, and the interests of his family after his death." *Walker* v. *Torrance,* 12 *Ga.* 604, 608. In this opinion the learned Judge seems to have overlooked the fundamental rule that the State, in its sovereign capacity, has the absolute right to grant or refuse administration on estates, and to direct how and by whom such administration may be had. Nevertheless, subsequently to this decision the statute law of the State was modified; but our Code still preserves the essence of that act in sections 3884 and 3941.

"Citizens of this State only are eligible to be executors, except as provided for in section 3867." Civil Code (1910), § 3884. It will be observed that section 3867 provides in substance that any citizen of the United States may act as executor of the will of a deceased citizen of Georgia, when such executor has an interest in the estate of the deceased and will give the bond and comply with the requirements specified for non-resident administrators. This is found in section 3942. "None but citizens of the United States, residing in the State of Georgia, are qualified to be made administrators, except as provided in the next section." Civil Code (1910), § 3941. The exception referred to as being in section 3942 is in substance that whenever a citizen of another state

shall be heir at law of equal, greater, or sole interest of any estate of a deceased citizen of Georgia, it shall be lawful for such non-resident citizen to act as administrator of such estate, provided he complies with the requirements named in such section. In *Jones* v. *Smith*, 120 *Ga.* 642 (48 S. E. 134), Justice Cobb declared: "As a general rule, only citizens of the United States resident in Georgia are qualified to act as administrators in this State. Civil Code [1895], § 3365 [1910, § 3941]. The single exception to this rule is contained in section 3366 [1910, § 3942], which authorizes a citizen of another State, who has a given interest. in the estate of the deceased citizen of Georgia, to act as administrator under specified conditions." The court was here dealing with a domestic will. The act of 1856 (Acts 1855-6, p. 146) and that of 1860 (Acts 1860, p. 32) both provided that non-resident executors or administrators resident in another State could perform certain enumerated duties by virtue of their appointment and qualification in a foreign State. These acts are embraced in the Civil Code (1910), §§ 3894, 4101, 4102, 4105. The act of 1876 (Acts 1876, p. 36) provided the method by which non-resident executors and administrators could sell real estate in this State. Neither of these acts, however, furnishes any aid in the solution of the present problem. They merely furnish authority for performing certain acts without any appointment or grant to non-residents of letters of administration by the courts of ordinary of this State. They suggest, if anything pertinent, the ineligibility of non-residents as executors and administrators in Georgia.

The act of 1878 (Acts 1878-9, p. 146, § 2) provided as follows: "That in cases where no executor resident in this State has been appointed by such foreign wills and testaments, or where the resident executor, or executors, named in such foreign wills and testaments, shall fail or refuse to qualify, then, on the failure or omission of the non-resident executor or executors named in such foreign will to make probate of and take out letters testamentary thereunder within twelve months from the death of the testator, the courts of ordinary of this State shall have jurisdiction and authority" to issue letters upon compliance with certain specified requirements, *"Provided,* that nothing in this act shall authorize the appointment of such administrator in case of such foreign will, when a duly authorized and qualified administrator or executor,

under the laws of another State, is willing to discharge, and does within twelve months from the testator's death, proceed to discharge, his duties concerning such property in this State, according to the laws now existing in this State as to foreign executors and administrators." Prior to the passage of the act of 1878, citizens of other States were not qualified or eligible to be executors. The act of 1878 makes provision for such non-resident executors to act under certain contingencies named therein, without making any direct reference to existing acts which made them ineligible. In 1883 (Acts 1882-3, p. 100) the General Assembly, in an act the first section of which amended the act of 1878, provided that foreign wills disposing of property in Georgia might be proved by "any person named as executor of such will" within twelve months after the death of the testator or the passage of the act. The second section of this act provides that after proving the will in this State the foreign executor "shall be entitled to qualify as a domestic executor and to receive letters testamentary upon the estate of his testator in Georgia upon the same terms and conditions as are required by law of citizens of Georgia."

The act of 1886 (Acts 1886, p. 32) provided that "any last will and testament made by a person competent to make a will under the laws of Georgia, resident and a citizen of any of the United States other than the State of Georgia, and which may be construed to dispose of real or personal property in this State, shall be admitted to probate in any county of this State where any of the property disposed of by said will may be at the time such probate is sought: *Provided,* that said last will and testament shall have been in all respects executed in accordance with the laws of the State in which he resided at the time of the execution; and *provided further,* that probate of said will shall have been made in solemn or final form in the State where the testator resided, and admitted to record finally as the last will and testament of the testator, according to the laws of that State." The act of 1889 (Acts 1889, p. 190) authorized foreign wills to be admitted to probate in this State in common and solemn form upon the application of the person therein named as executor, or if no executor were named or, if named, refused to act, then upon the application of some other person interested in the will. These acts bring the history of the legislation on the subject down to

the passage of the act of 1894. It will be seen from what has been said above, that, beginning with the passage of the act of 1805, persons not residing in Georgia were not eligible to be executors of wills disposing of property in this State. Subsequently this rule was relaxed and non-resident executors were permitted, under named conditions, to perform the duties of executors of estates as to real estate situate in Georgia. Due to the numerous acts on the subject, more or less confusion arose; and in 1894 a bill was introduced in the General Assembly, which, we are informed, was prepared by Hon. Joseph R. Lamar, afterwards a Justice of this court, and a member of the commission which prepared the Code of 1895 of this State. The act said to have been prepared by him is comprehensive. It undertook to deal with the entire subject of foreign wills. Certainly Mr. Lamar, a ripe scholar with much experience on the bench and at the bar, had every opportunity to know the confusion that existed; and it is reasonable to suppose that it was his purpose to clarify the situation. If he prepared the act of 1894, its purpose must have been carefully considered by the codifiers. If provisions of former acts not mentioned in the act of 1894 were omitted from the Codes of 1895 and 1910, it is not reasonable to suppose that such omission was due to accident or oversight. It is far more reasonable to conclude that the codifiers believed such former acts to have been repealed by necessary implication in the passage of the act of 1894. It must be remembered that the Codes of 1895 and 1910 were enacted into law. Where their provisions are free from doubt, or reasonably so, such provisions should be accepted as representing the intention of the General Assembly, rather than to set aside such intention by giving precedence to parts of former acts which were omitted from these Codes.

Coming to the act of 1894, as found in Code sections 3879 and 3880, we find the language to be [1] "If the resident executor refuse to offer any foreign will to probate, or [2] if the executor nominated in said foreign will is not a citizen of this State, the foreign will may be probated at the instance of any heir, legatee, distributee, devisee, or creditor of said testator, and letters testamentary shall issue *to an administrator with the will annexed, such administrator to be a citizen of this State,* and to be selected according to the rules laid down in the Code for selecting admin-

istrators." § 3879. (Italics ours.) According to the question propounded by the Court of Appeals, we conclude that no resident of Georgia was named as executor of the foreign will. Eliminating the·clause, for the present purpose, with reference to the resident executor, the next provision in said Code section is: "if the executor nominated in said foreign will is not a citizen of this State," then that an administrator with the will annexed is to be appointed by the ordinary. It will be observed that this act does not contain the provision found in the act of 1878 on failure or omission of non-resident executors or executors named in foreign wills "to make probate of and take out letters testamentary," etc. The language is too clear, in the act of 1894, to permit us to set it aside or override its necessary meaning by a process of construction which requires the giving of superior weight to parts of former acts not retained in the later act of 1894, and by the codifiers omitted from the Codes of 1895 and 1910, and which, we think, were repealed by necessary implication in the passage of the act of 1894. This view is reinforced by a consideration of the next section of the act of 1894, now found in section 3880 of the Code of 1910. That section provided: "In all cases after January 1st, 1895, until such foreign wills have been probated as herein required, no property in this State belonging to such testator shall be managed or controlled by the executor therein named, or any administrator with the will annexed, appointed elsewhere. Nothing in this section shall impair the right of foreign executors and administrators to sue in the courts of this State, nor shall it impair their right to draw dividends, check out funds, or transfer stock, as now provided by law."

It has been suggested that Code section 3879 was intended by the General Assembly to mean that an administrator with the will annexed should be appointed if the executor nominated in said foreign will is not a citizen of this State *and has not offered the will for probate as required by law*. That is, that the words here italicized should be inserted in the section after the words, "is not a citizen of this State." We do not feel at liberty to so insert these words. This provision was not included in the act of 1894, and we must assume that the General Assembly knew what they were doing and intentionally changed the law. To interpolate these words would be to reverse the meaning of the language employed

by the General Assembly. We think it far better, should a subsequent General Assembly deem it a better State policy to permit non-resident executors to qualify and administer estates in Georgia, that it should avail itself of its next opportunity to rectify the mistaken policy, if such it be, by new legislation. We answer the first question in the affirmative.

Counsel for the non-resident executor rely strongly upon the case of *McCowan* v. *Brooks,* 113 *Ga.* 384 (39 S. E. 112). We have carefully examined that case; and while there is some language, found in the opinion of the learned Justice who wrote the decision, bearing upon the general subject, there is nothing in that case actually ruled which conflicts with the ruling we have now made. The question with which we are dealing here was not involved in any way in that case. It necessarily follows that the language employed in the opinion deemed to be contrary to the present ruling is obiter and not binding. We have also carefully considered all of the authorities cited in all of the briefs. The citations show industry and talent, of great service to this court, saving us much time. We think it unnecessary, however, to mention all of these cases in an opinion already much more lengthy than the writer would prefer. We find outside authorities tending in both directions. There is no binding authority in this State in conflict with the ruling we have here announced.

2, 3. What has been said above is sufficient reply to the second and third questions.          *All the Justices concur.*