LEHMAN BROTHERS *v.* SCHEIN ET AL.

No. 73–439.   Argued March 19, 1974—Decided April 29, 1974*

DOUGLAS, J., delivered the opinion for a unanimous Court. REHN-QUIST, J., filed a concurring opinion, *post*, p. 392.

*James J. Hagan* argued the cause for all petitioners. With him on the briefs for petitioner in No. 73–439 was *Stephen P. Duggan. David Hartfield, Jr.,* and *Laura*

---

* Together with No. 73–440, *Simon v. Schein et al.*, and No. 73–495, *Investors Diversified Services, Inc., et al. v. Schein et al.,* also on certiorari to the same court.

*Banfield* were on the brief for petitioner in No. 73–440. *James V. Hayes, John E. Tobin, Richard Y. Holcomb,* and *Allan R. Freedman* were on the briefs for petitioners in No. 73–495.

*Donald N. Ruby* argued the cause for all respondents. With him on the brief were *Benedict Wolf, Edward A. Berman,* and *Victor P. Muskin.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

These cases are here on petitions for certiorari and raise one identical question.

These are suits brought in the District Court for the Southern District of New York. Lum's, one of the respondents in the *Lehman Bros.* petition, is a Florida corporation with headquarters in Miami. Each of the three petitions, which we consolidated for oral argument, involves shareholders' derivative suits naming Lum's and others as defendants; and the basis of federal jurisdiction is diversity of citizenship, 28 U. S. C. § 1332 (a)(1), about which there is no dispute.

The complaints allege that Chasen, president of Lum's, called Simon, a representative of Lehman Bros., and told him about disappointing projections of Lum's earnings, estimates that were confidential, not public. Simon is said to have told an employee of IDS[1] about them. On the next day, it is alleged that the IDS defendants sold

---

[1] Investors Diversified Services, Inc., Investors Variable Payment Fund, Inc., and IDS New Dimensions Fund, Inc., were defendants in the *Schein* case. Of those, only Investors Diversified Services, Inc., is a defendant in the other derivative action brought by Gregorio. The dismissal of the third derivative action (*Gildenhorn*) was not pursued on appeal.

One Sit and one Jundt, defendants alleged to be employees of IDS, Inc., were dismissed from the case by the District Court for lack of personal jurisdiction. There was no appeal from that dismissal.

83,000 shares of Lum's on the New York Stock Exchange for about $17.50 per share. Later that day the exchanges halted trading in Lum's stock and on the next trading day it opened at $14 per share, the public being told that the projected earnings would be "substantially lower" than anticipated. The theory of the complaints was that Chasen was a fiduciary but used the inside information along with others for profit and that Chasen and his group are liable to Lum's for their unlawful profits.

Lehman and Simon defended on the ground that the IDS sale was not made through them and that neither one benefited from the sales. Nonetheless plaintiffs claimed that Chasen and the other defendants were liable under *Diamond* v. *Oreamuno*, 24 N. Y. 2d 494, 248 N. E. 2d 910 (1969): *Diamond* proceeds on the theory that "inside" information of an officer or director of a corporation is an asset of the corporation which had been acquired by th insiders as fiduciaries of the company and misappropi ted in violation of trust.

The District Court looked to the choice-of-law rules of the State of New York, *Klaxon Co.* v. *Stentor Electric Mfg. Co.*, 313 U. S. 487 (1941), and held that the law of the State of incorporation governs the existence and extent of corporate fiduciary obligations, as well as the liability for violation of them. *Diamond* did, indeed, so indicate, 24 N. Y. 2d, at 503–504, 248 N. E. 2d, at 915.

The District Court in examining Florida law concluded that, although the highest court in Florida has not considered the question, several district courts of appeal indicate that a complaint which fails to allege both wrongful acts and damage to the corporation must be dismissed.[2] The District Court went on to consider whether if Florida followed the *Diamond* rationale, defendants would be liable. It concluded that the

[2] *E. g., Palma* v. *Zerbey*, 189 So. 2d 510, 511 (Fla. App. 1966).

present complaints go beyond *Diamond,* as Chasen, the only fiduciary of Lum's involved in the suits, never sold any of his holdings on the basis of inside information. The other defendants were not fiduciaries of Lum's.[3] The District Court accordingly dismissed the complaints, 335 F. Supp. 329 (1971).

The Court of Appeals by a divided vote reversed the District Court. 478 F. 2d 817 (CA2 1973). While the Court of Appeals held that Florida law was controlling, it found none that was decisive. So it then turned to the law of other jurisdictions, particularly that of New York, to see if Florida "would probably" interpret *Diamond* to make it applicable here. The Court of Appeals concluded that the defendants had engaged with Chasen "to misuse corporate property," *id.,* at 822, and that the theory of *Diamond* reaches that situation, "viewing the case as the Florida court would probably view it." *Ibid.* There were emanations from other Florida decisions[4] that made the majority on the Court of Appeals feel that Florida would follow that reading of *Diamond.* Such a construction of *Diamond,* the Court of Appeals said, would have "the prophylactic effect of providing a disincentive to insider trading." *Id.,* at 823. And so it would. Yet under the regime of *Erie R. Co.* v. *Tompkins,* 304 U. S. 64 (1938), a State can make just the opposite her law, providing there is no overriding federal rule which pre-empts state law by reason of federal curbs on trading in the stream of commerce.

The dissenter on the Court of Appeals urged that that court certify the state-law question to the Florida Supreme Court as is provided in Fla. Stat. Ann. § 25.031

---

[3] The District Court also held that whether Chasen would be liable not for profiting himself from the inside information but for revealing it to others could not be reached as Chasen, a nonresident of New York, had not been properly served.

[4] See, *e. g., Quinn* v. *Phipps,* 93 Fla. 805, 113 So. 419 (1927).

and its Appellate Rule 4.61. 478 F. 2d, at 828. That path is open to this Court and to any court of appeals of the United States. We have, indeed, used it before [5] as have courts of appeals.[6]

Moreover when state law does not make the certification procedure available,[7] a federal court not infrequently will stay its hand, remitting the parties to the state court to resolve the controlling state law on which the federal rule may turn. *Kaiser Steel Corp.* v. *W. S. Ranch Co.*, 391 U. S. 593 (1968). Numerous applications of that practice are reviewed in *Meredith* v. *Winter Haven*, 320 U. S. 228 (1943), which teaches that the mere difficulty in ascertaining local law is no excuse for remitting the parties to a state tribunal for the start of another lawsuit. We do not suggest that where there is doubt as to local law and where the certification procedure is available,

---

[5] *Aldrich* v. *Aldrich*, 375 U. S. 249 (1963); *Dresner* v. *City of Tallahassee*, 375 U. S. 136 (1963).

[6] *Trail Builders Supply Co.* v. *Reagan*, 430 F. 2d 828 (CA5 1970); *Gaston* v. *Pittman*, 413 F. 2d 1031 (CA5 1969); *Martinez* v. *Rodriquez*, 410 F. 2d 729 (CA5 1969); *Moragne* v. *States Marine Lines, Inc.*, 409 F. 2d 32 (CA5 1969), rev'd on other grounds, 398 U. S. 375 (1970); *Hopkins* v. *Lockheed Aircraft Corp.*, 394 F. 2d 656 (CA5 1968); *Life Ins. Co. of Virginia* v. *Shifflet*, 380 F. 2d 375 (CA5 1967); *Green* v. *American Tobacco Co.*, 325 F. 2d 673 (CA5 1963); *Sun Insurance Office* v. *Clay*, 319 F. 2d 505 (CA5 1963) The Fifth Circuit's willingness to certify is in part a product of frequent state court repudiation of its interpretations of state law. See the cases summarized in *United Services Life Ins. Co.* v. *Delaney*, 328 F. 2d 483, 486–487 (CA5 1964) (Brown, C. J., concurring).

[7] Certification procedures are available in several States, including Colorado, Colo. Appellate Rule 21.1 (1970); Hawaii, Haw. Rev. Stat. § 602–36 (1969); Louisiana, La. Rev. Stat. Ann. § 13:72.1 (Supp. 1973); Maine, Me. Rev. Stat. Ann., Tit. 4, § 57 (1964); Maryland, Md. Ann. Code, Art. 26, § 161 (Supp. 1973); Massachusetts, Mass. Sup. Jud. Ct. Rule 3:21 (1973); Montana, Mont. Sup. Ct. Rule 1 (1973); New Hampshire, N. H. Rev. Stat. Ann. § 490 App. R. 20 (Supp. 1973); and Washington, Wash. Rev. Code Ann. §§ 2.60.010–2.60.030 (Supp. 1972).

resort to it is obligatory. It does, of course, in the long run save time, energy, and resources and helps build a cooperative judicial federalism.[8] Its use in a given case rests in the sound discretion of the federal court.

Here resort to it would seem particularly appropriate in view of the novelty of the question and the great unsettlement of Florida law, Florida being a distant State. When federal judges in New York attempt to predict uncertain Florida law, they act, as we have referred to ourselves on this Court in matters of state law, as "outsiders" lacking the common exposure to local law which comes from sitting in the jurisdiction.

> "Reading the Texas statutes and the Texas decisions as outsiders without special competence in Texas law, we would have little confidence in our independent judgment regarding the application of that law to the present situation. The lower court did deny that the Texas statutes sustained the Commission's assertion of power. And this represents the view of an able and experienced circuit judge of the circuit which includes Texas and of two capable district judges trained in Texas law." *Railroad Comm'n* v. *Pullman Co.,* 312 U. S. 496, 499 (1941).

See also *MacGregor* v. *State Mutual Life Assur. Co.,* 315 U. S. 280, 281 (1942); *Reitz* v. *Mealey,* 314 U. S. 33, 39 (1941).

The judgment of the Court of Appeals is vacated and the cases are remanded so that that court may reconsider

---

[8] See Wright, The Federal Courts and the Nature and Quality of State Law, 13 Wayne L. Rev. 317 (1967); Kurland, Toward a Co-Operative Judicial Federalism: The Federal Court Abstention Doctrine, 24 F. R. D. 481 (1960); Note, Inter-Jurisdictional Certification: Beyond Abstention Toward Cooperative Judicial Federalism, 111 U. Pa. L. Rev. 344 (1963); Note, Florida's Interjurisdictional Certification: A Reexamination To Promote Expanded National Use, 22 U. Fla. L. Rev. 21 (1969).

whether the controlling issue of Florida law should be certified to the Florida Supreme Court pursuant to Rule 4.61 of the Florida Appellate Rules.

*So ordered.*

MR. JUSTICE REHNQUIST, concurring.

The Court says that use of state court certification procedures by federal courts "does, of course, in the long run save time, energy, and resources and helps build a cooperative judicial federalism." *Ante,* at 391. It also observes that "[w]e do not suggest that where there is doubt as to local law and where the certification procedure is available, resort to it is obligatory," *ante,* at 390–391, and further states that "[i]ts use in a given case rests in the sound discretion of the federal court." *Ante,* at 391. I agree with each of these propositions, but I think it appropriate to emphasize the scope of the discretion of federal judges in deciding whether to use such certification procedures.

Petitioners here were defendants in the District Court. That court, applying applicable New York choice-of-law rules, decided that Florida law governs the case and, finding that the respondents' complaint requested relief which would extend the substantive law even beyond New York's apparently novel decision in *Diamond v. Oreamuno,* 24 N. Y. 2d 494, 248 N. E. 2d 910 (1969), dismissed the complaint on the merits. The Court of Appeals agreed that Florida law applied, but held that Florida law would permit recovery on the claim stated by respondents. The opinion of the dissenting judge of the Court of Appeals, disagreeing with the majority's analysis of Florida law, added in a concluding paragraph that in light of the uncertainty of Florida law, the Florida certification procedure should have been utilized by the Court of Appeals. On rehear-

ing, petitioners requested the Court of Appeals to utilize this procedure, but they concede that this is the first such request that they made. Thus petitioners seek to upset the result of more than two years of trial and appellate litigation on the basis of a point which they first presented to the Court of Appeals upon petition for rehearing. Cf. *Hostetter* v. *Idlewild Liquor Corp.*, 377 U. S. 324, 329 (1964).

The authority which Congress has granted this Court to review judgments of the courts of appeals undoubtedly vests us not only with the authority to correct errors of substantive law, but to prescribe the method by which those courts go about deciding the cases before them. *Western Pacific Railroad Case,* 345 U. S. 247 (1953). But a sensible respect for the experience and competence of the various integral parts of the federal judicial system suggests that we go slowly in telling the courts of appeals or the district courts how to go about deciding cases where federal jurisdiction is based on diversity of citizenship, cases which they see and decide far more often than we do.

This Court has held that a federal court may not remit a diversity plaintiff to state courts merely because of the difficulty in ascertaining local law, *Meredith* v. *Winter Haven,* 320 U. S. 228 (1943); it has also held that unusual circumstances may require a federal court having jurisdiction of an action to nonetheless abstain from deciding doubtful questions of state law; *e. g., Louisiana Power & Light Co.* v. *City of Thibodaux,* 360 U. S. 25 (1959); *Kaiser Steel Corp.* v. *W. S. Ranch Co.,* 391 U. S. 593 (1968) (*per curiam*). In each of these situations, our decisions have dealt with the issue of how to reconcile the exercise of the jurisdiction which Congress has conferred upon the federal courts with the important considerations of comity and cooperative federalism which

are inherent in a federal system, both of which must be subject to a single national policy within the federal judiciary.

At the other end of the spectrum, however, I assume it would be unthinkable to any of the Members of this Court to prescribe the process by which a district court or a court of appeals should go about researching a point of state law which arises in a diversity case. Presumably the judges of the district courts and of the courts of appeals are at least as capable as we are in determining what the Florida courts have said about a particular question of Florida law.

State certification procedures are a very desirable means by which a federal court may ascertain an undecided point of state law, especially where, as is the case in Florida, the question can be certified directly to the court of last resort within the State. But in a purely diversity case such as this one, the use of such a procedure is more a question of the considerable discretion of the federal court in going about the decisionmaking process than it is a question of a choice trenching upon the fundamentals of our federal-state jurisprudence.

While certification may engender less delay and create fewer additional expenses for litigants than would abstention, it entails more delay and expense than would an ordinary decision of the state question on the merits by the federal court. See *Clay* v. *Sun Insurance Office,* 363 U. S. 207, 226–227 (1960) (dissenting opinion). The Supreme Court of Florida has promulgated an appellate rule, Fla. Appellate Rule 4.61 (1967), which provides that upon certification by a federal court to that court, the parties shall file briefs there according to a specified briefing schedule, that oral argument may be granted upon application, and that the parties shall pay the costs of the

certification.* Thus while the certification procedure is more likely to produce the correct determination of state law, additional time and money are required to achieve such a determination.

If a district court or court of appeals believes that it can resolve an issue of state law with available research materials already at hand, and makes the effort to do so, its determination should not be disturbed simply because the certification procedure existed but was not used. The question of whether certification on the facts of this case, particularly in view of the lateness of its suggestion by petitioners, would have advanced the goal of correctly disposing of this litigation on the state law issue is one which I would leave, and I understand that the Court would leave, to the sound judgment of the court making the initial choice. But since the Court has today for the first time expressed its view as to the use of certification procedures by the federal courts, I agree that it is appropriate to vacate the judgment of the Court of Appeals and remand the cases in order that the Court of Appeals may reconsider certification in light of the Court's opinion.

---

*Fla. Appellate Rule 4.61 (1967) provides in part:

"f. Costs of Certificate. The costs of the certificate and filing fee shall be equally divided between the parties unless otherwise ordered by this Court.

"g. Briefs and Argument. The appellant or moving party in the federal court shall file and serve upon its adversary its brief on the question certified within 30 days after the filing of said certificate in the appellate court of this state having jurisdiction. The appellee or responding party in the federal court shall file and serve upon its adversary its brief within 20 days after the receipt of appellant's or moving party's brief and a reply brief shall be filed within 10 days thereafter.

"h. Oral Argument. Oral argument may be granted upon application and, unless for good cause shown the time be enlarged by special order of the Court prior to the hearing thereon, the parties shall be allowed the same time as in other causes on the merits."