Stanley K. SMIGIEL, et ux. and
Theresa Smigiel, his wife,
Plaintiffs-Appellees,

v.

AETNA CASUALTY AND SURETY
COMPANY, Defendant-Appellant.

No. 85–3188.

United States Court of Appeals,
Eleventh Circuit.

March 31, 1986.

Janet L. Brown, Orlando, Fla., Delia D. Rose, John N. Bogdanoff, Daytona Beach, Fla., for defendant-appellant.

Lucinda J. Beneke, Whitson & Whitson, Clearwater, Fla., Michael L. Kinney, Tampa, Fla., for plaintiffs-appellees.

Before GODBOLD, Chief Judge, KRAVITCH, Circuit Judge, and SIMPSON, Senior Circuit Judge.

SIMPSON, Senior Circuit Judge:

The Smigiels purchased some improved real property by an agreement for deed in 1979. Aetna Casualty and Surety Company issued them a fire insurance policy covering a commercial building on the land. The Smigiels paid the premiums when they came due and the policy remained in effect

at all material times. At the end of February, 1981, the Smigiels sold the land to Alfred Smith who signed a promissory note and a "conditional assignment and modification of agreement for deed" (assignment note). The assignment did not relieve the Smigiels of their obligation to make payments under the original agreement but it did provide that the Smigiels would retain a purchase-money lien against the property to secure the debt evidenced by Smith's note.

On September 15, 1981, the building was damaged by fire. Two days later, Smith notified Aetna which sent an adjuster. The adjuster estimated the damages at $99,021.35. Smith accepted the estimate and hired a contractor to begin repairs. Shortly thereafter, Aetna informed Smith and the contractor that it was denying coverage because the policy had not been endorsed to reflect Smith's ownership.

On October 5, the Smigiels informed Aetna that they would accept payment in an amount equal to the estimate that the adjuster had given Smith. At the end of October, the Smigiels, having received no payment from Aetna, requested a proof of loss form but the insurer refused to comply with their request on the grounds that the Smigiels had no insurable interest. On November 13, the Smigiels filed a sworn proof of loss on plain paper. At approximately the same time they demanded that Aetna comply with the terms of its policy and appoint an appraiser to determine the amount of damages. Aetna refused this request for the first step leading to damage arbitration under the terms of the policy again asserting lack of an insurable interest as justification for its inaction.

In December the Smigiels sued Aetna in a Florida state court. Aetna responded with an answer which pleaded several affirmative defenses and admitted that the Smigiels had an insurable interest in the property. Aetna later moved for, and obtained, removal to federal district court. There, in a pretrial stipulation, Aetna admitted coverage. Shortly before trial, however, Aetna moved for summary judgment, arguing that the Smigiels were not entitled to any recovery under the policy because Smith had repaired the premises and had continued to make the full payments required by the assignment and note. The district court cited three Florida cases, all of which were written by the same intermediate appellate court, in addressing the issue. Two of the cases espoused "The New York Rule" which holds that a vendor who holds a purchase money lien against a building may recover the full outstanding purchase price from his insurer if the building is completely destroyed by fire, regardless of the fact that the vendee, or the vendee's insurer later pays or reduces the outstanding balance; *Springfield Fire and Marine Insurance Co. v. Boswell,* 167 So.2d 780, 785 (Fla.1st Dist.Ct.App.1964); *Rutherford v. Pearl Assurance Co.,* 164 So.2d 213, 215–16 (Fla.1st Dist.Ct.App. 1964) (dicta). The judge found the applicable Florida law "unclear" however, because the applicable subsections of Florida's Valued Policy Law, Fla.Stat. § 627.702 (1981), applied different rules of recovery to partial and total losses.[1] Moreover, the same court which had written *Springfield* and *Rutherford* had also held in a later case that: "... subsequent partial or full extinguishment of the debt giving rise to the insurable interest will reduce the loss-payee's interest in the proceeds to the extent that the debt has been satisfied."

---

1. Fla.Stat. § 627.702 (1981) provides in pertinent part:

(1) In event of total loss by fire or lightning of any building ... located in this state and insured by any insurer as to such perils, ... the insurer's liability, if any, under the policy for such total loss shall be in the amount of money for which such property was so insured as specified in the policy and for which premium has been charged and paid.

(2) In the case of partial loss by fire or lightning of any such property, the insurer's liability, if any, under the policy shall be for the actual amount of such loss but shall not exceed the amount of insurance specified in the policy as to such property and such perils.

.    .    .    .    .

*South Carolina Insurance Co. v. Pensacola Home and Savings Association,* 393 So.2d 1124, 1125 (Fla.1st Dist.Ct.App.1980). In *South Carolina Insurance,* the court stated that the creditor's interest in the insurance is his security for the debt and that, "Equity requires that subsequent events such as payment of the underlying debt not be ignored when the court distributes the insurance proceeds." *Id.* at 1125 *quoting from Calvert Fire Insurance Co. v. Environs Development Co.,* 601 F.2d 851, 856 (5th Cir.1979) (diversity case under Georgia law). The district court resolved the issue in favor of the Smigiels, under the rationale behind the New York Rule:

> [A] fire insurance policy is a contract to insure against fire loss, and its premiums are assumed to represent the fair equivalent of the obligation contracted for by the insurer without knowledge of the existence of collateral remedies.

Record Vol. 1., p. 190 *quoting from Rutherford,* 164 So.2d at 214. The court concluded that the Smigiels could recover "whatever expenses were necessary to restore the collateral to a value equal to the amount of the unpaid purchase price at the time of the fire," (Record Vol. I., p. 190) and denied Aetna's motion for summary judgment.

When the case was called for trial, the parties announced that they had reached a settlement. The settlement was memorialized by a written stipulation which provided that: (1) the damages would be fixed at the amount of the original estimate, $99,021.35; (2) that the court would retain jurisdiction to award costs, attorneys' fees and interest; and, (3) that the defendants would reserve the right to appeal the denial of summary judgment.

The Smigiels moved for an award of prejudgment interest. Under the terms of the policy, the insurance proceeds were due within 60 days from the submission of proof of loss forms. The Smigiels submitted their plain-paper-proof on November 13, 1981. Consequently, the district judge fixed the due date at January 12, 1982. The court held that the amount of the stipulated damages was due and owing from that date. Consequently, he awarded $25,163.81 in prejudgment interest. On the due date, the Smigiels' potential liability for payments owed under the original agreement far exceeded the $99,021.35 that Aetna had offered Smith many months before.

On appeal, Aetna argues that the district court erred in: (1) failing to apply the equitable principle of unjust enrichment to deny plaintiff's claim and (2) in awarding prejudgment interest as of January 12, 1982, rather than April 12, 1984, the date of settlement. In its reply brief Aetna also urges certification of the unjust enrichment issue to the Supreme Court of Florida under Fla.R.App.P. 9.030(a)(2)(C) on the grounds that the authority relied on by the district court is over 20 years old and comes from an intermediate appellate court rather than the highest court of the state. Aetna further asserts that the conclusive resolution of the unjust enrichment issue is of great importance to the insurance industry.

■ The decision whether to certify a question of state law to a state supreme court is committed to this court's discretion, *Lehman Brothers v. Schein,* 416 U.S. 386, 390–91, 94 S.Ct. 1741, 1743–44, 40 L.Ed.2d 215 (1974). In addition to the usual considerations, *see generally, Florida v. Exxon Corp.,* 526 F.2d 266, 274–75 (5th Cir.1976), this court is struck by an amazing irony. Aetna, which now prays for an opinion from a Florida court, petitioned to remove the case from the jurisdiction of the state courts. We further note that the case would probably have gone no further in the state court system than a first appeal to the intermediate courts whose decisions Aetna finds insufficiently authoritative. See, Fla. Const. Art. 5, § 3 (1981); see also, Fla.R.App.P. 9.030(a)(2)(A) & (C). We find insufficient cause however to invoke the jurisdiction of the Supreme Court of Florida by certifying the question under Fla.R.App.P. 9.030(a)(2)(C). This court must take into account the likelihood of further delay in this case. *Florida v.*

*Exxon,* 526 F.2d 275. Although we are *Erie*-bound, we may exercise an option to make an educated guess as to how the Florida courts would resolve the issue. *Trail Builders Supply Co. v. Reagan,* 409 F.2d 1059, 1061 (5th Cir.1969). We find that we are sufficiently educated by the available Florida authority to allow our exercise of that option.

Aetna bases its argument that Florida courts would deny recovery in this case on a statement by the *Springfield* court that it would, "... recoil from pronouncing or applying any rule which would lead to unjust enrichment at the expense of innocent parties...." The linchpin of the argument is the premise that Florida's courts would regard the Smigiels' recovery as an unjust enrichment. We believe the premise is fatally flawed.

The one case which troubled the district judge, *South Carolina Insurance Co. v. Pensacola Home Savings Association,* 393 So.2d 1124 did not really address the question whether a full award of the damages sought would be "unjust" or "inequitable" but rather determined that the claimant had an insufficient insurable interest to support the damages claimed. The court stated that the rationale for its holding was that a mortgagee's sole interest in the property is to secure the payment of the mortgagor's debt and that the insurable interest vanishes when the debt is paid, regardless of whether the payment is made before or after the occurrence which damaged the collateral. *Id.* at 1125.

■ We would be inclined to consider reversal on the basis of the *South Carolina* case if the Smigiels' only insurable interest in the building was its value as collateral to secure Smith's debt. To the contrary, the Smigiels remained debtors under the original agreement and were obligated to their vendor in an amount which greatly exceeded the proceeds which they claimed under the policy. The Smigiels were statutorily entitled to claim an insurable interest in the amount "to which they might be damnified by loss, injury or impairment...." Fla.Stat. § 627.405(3)

(1981). This second insurable interest would only be diminished to the extent that the Smigiels' debts were paid. See, *Cincinnati Insurance Co. v. Palmer,* 297 So.2d 96 (Fla. 4th Dist.Ct.App.1974).

The Smigiels can claim the full amount of the damages sought because there is no question of their insurable interest. The New York Rule espoused in *Springfield* and *Rutherford* has not been overruled by the courts of Florida and, therefore, controls. See, *Rabon v. Automatic Fasteners Inc.,* 672 F.2d 1231, 1235 n. 7 (5th Cir.1982), (Unit B, Binding). We agree with the district judge that the rationale behind the rule is equally applicable to a partial, as well as a total, loss. Aetna received premiums to cover such losses and damages and the Smigiels having paid those premiums, were entitled to collect damages up to the value of their insurable interest. The measure of damages was fully established under Florida law as "... the cost of placing the building in, as nearly as possible, the same condition that it was before the loss...." *Sperling v. Liberty Mutual Insurance Co.,* 281 So.2d 297, 298 (Fla.1973). Aetna received premiums to cover said losses. The Smigiels cannot be held to have been "unjustly enriched", by Aetna merely because they pursued their contractual rights to recovery which were independent of Smith's payments and repairs. See, *Cooper v. Alford,* 446 So.2d 1094, 1095 (1st Dist.Ct.App.1984) (mortgagee named as loss payee may collect on mortgagor's policy as well as his own). Smith may well have enriched the Smigiels; he undoubtedly enriched Aetna by giving it an excuse to further delay payment of the claim. Any injustice from Smith's efforts is his to claim, however, not Aetna's.

■ Finally, we reject Aetna's arguments that the damages were not liquidated as of January 12, 1982, because the Smigiels submitted various estimates for damages exceeding the original estimate and because it contested liability until settlement. The record shows that the Smigiels first offered to accept the $99,021.35 in October, 1981. The damages would have

been fixed at that early date if Aetna had accepted the offer at that time, rather than refusing to settle the claim or follow arbitration procedures on the frivolous premise that the Smigiels had no insurable interest. Having been forced into litigation, the Smigiels were entitled to present their best case for full recovery without sacrificing their rights to prejudgment interest. We affirm the award of prejudgment interest under the principles announced in *Argonaut Insurance Co. v. May Plumbing Co.*, 474 So.2d 212, 213–15 (1985) and *Warren v. Old Dominion Insurance Co.*, 465 So.2d 1376, 1377–79 (Fla. 5th Dist.Ct.App.1985).

The judgment of the district court is AFFIRMED.