[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 97-8415

D. C. Docket No. 1:92-cv-103-JEC

ALEJANDRO ESCARENO,

Plaintiff-Appellant,

versus

NOLTINA CRUCIBLE AND REFRACTORY CORPORATION, et al.,

Defendants,

CARL NOLTE SOHNE GMBH,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Georgia

**(May 1, 1998)**

Before COX, DUBINA and BLACK, Circuit Judges.

DUBINA, Circuit Judge:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA PURSUANT TO ARTICLE VI, SECTION VI, PARAGRAPH IV, OF THE GEORGIA CONSTITUTION.

TO THE SUPREME COURT OF GEORGIA AND THE HONORABLE JUSTICES THEREOF:

This case involves a dispute as to whether a Fulton County, Georgia probate court properly appointed an administrator over the estate of Alejandro Escareno ("Escareno" or "Plaintiff"), the deceased plaintiff in this products liability suit. The Plaintiff contends that the Georgia probate court acted within the jurisdiction conferred by O.C.G.A. § 15-9-31, which authorizes probate courts to grant administration of estates, when it appointed Philip P. Grant ("Grant") as administrator of Escareno's estate. The district court denied the Plaintiff's motion to substitute Grant as a party pursuant to Fed. R. Civ. P. 25(a) on the ground that the probate court lacked jurisdiction to appoint an administrator because Escareno, a Mexican resident, did not have any property in Fulton County, nor did he have a cause of action against a Fulton County defendant. *See* § 15-9-31.

To decide this case, we must determine the precise requirements of § 15-9-31 for the administration of the estate of a non-resident of Georgia. Because this statute allows for differing interpretations and there are no controlling precedents under Georgia law, we certify the question to the Supreme Court of Georgia.

2

## I. FACTUAL BACKGROUND

Escareno filed a products liability suit in the district court against Noltina Crucible and Refractory Corp. ("Noltina Crucible") for severe personal injuries sustained on the job in 1990 when a crucible burst, showering him with molten zinc. Escareno later filed an Amended Complaint adding Carl Nolte Sohne GmbH ("Carl Nolte Sohne"), a privately owned German business, as a defendant. Escareno alleged that Carl Nolte Sohne and Noltina Crucible manufactured the crucible that caused his injuries. Neither Noltina Crucible nor Carl Nolte Sohne is incorporated in Georgia, has an office or place of business in Georgia, or is registered to do business in Georgia. Escareno died in December, 1992, at which time he was a resident of Salinas, Mexico with no property in Georgia other than his interest in this lawsuit and the case file kept by his attorney. Escareno is survived by a son in Mexico.

After the defendants had filed motions for summary judgment, a suggestion of death of the plaintiff was filed. The district court entered an order denying the motions for summary judgment without prejudice and stating that the action would be dismissed under Fed. R. Civ. P. 25(a) ("Rule 25(a)"), unless there was a substitution of parties within ninety days of the suggestion of death.

A probate judge in Fulton County, Georgia, appointed Escareno's counsel, Mr. Irwin W. Stolz ("Stolz"), as temporary administrator of Escareno's estate in an ex parte proceeding. Subsequently, Stolz moved the district court to substitute himself as the plaintiff. The defendants filed briefs in opposition to the motion for substitution. The district court denied Stolz's motion for substitution and ordered that the case be dismissed for failure to substitute

a proper party under Rule 25(a). The district court based this ruling on its determination that Stolz was not properly appointed in the state court under § 15-9-31. Stolz filed a motion for reconsideration which the district court also denied.

Escareno's counsel appealed the district court's decision to the Eleventh Circuit, and a panel of this court vacated and remanded the case. *Escareno v. Carl Nolte Sohne GmbH & Co,* 77 F.3d 407 (11th Cir. 1996).[1] Judge Godbold, writing for the panel, determined that the plaintiff should have another opportunity to request appointment of an administrator in a Georgia state court which would then "address the matter, recognizing that plaintiff was a nonresident, construe the Georgia statutes if necessary, and consider its jurisdiction." *Id.* at 412. The Eleventh Circuit did not decide the underlying question of whether the probate court's appointment of Stolz was proper, and the panel explicitly left the task of interpreting § 15-9-31 and related state cases to the Georgia courts. *Id.*

After the first appeal to the Eleventh Circuit, Escareno's counsel returned to probate court and requested the appointment of Grant as representative of Escareno's estate.[2] Carl Nolte Sohne was not represented at this proceeding. The probate court, which apparently was not aware of the complex procedural history of this case, appointed Grant without

---

[1]On May 19, 1995, The Eleventh Circuit dismissed this appeal with prejudice as to Noltina Crucible and Refractory Corporation based on a settlement. This dismissal left Carl Nolte Sohne as the only remaining defendant in the case.

[2]The mother of Escareno's heir purportedly consented to Grant's representation of the estate. There was a factual issue as to whether this consent was valid, and the district court expressed doubt as to whether it would be "sufficient to protect defendant from a later claim by the heirs." (R. 3-82-23 n.10).

addressing the legal issues that the Eleventh Circuit panel intended for the Georgia courts to resolve. Because Carl Nolte Sohne had no involvement in this proceeding, the probate court's summary appointment of Grant was never opposed or appealed to a higher state court.

When Escareno's counsel returned to the district court with a second motion to substitute, seeking to substitute Grant as the plaintiff, the district court found itself faced with essentially the same question it had determined in the first motion. The district court again denied the motion to substitute Grant on the ground that he was not a "proper party" under Rule 25(a) because he had not been appointed in accordance with the applicable Georgia statute, § 15-9-31. The district court also dismissed the action for failure to substitute a proper party within a reasonable time. Escareno's counsel then filed this appeal of the district court's denial of the motion to substitute a party and of the order of dismissal.

## II. ANALYSIS

To determine whether Grant was a "proper party" under Fed. R. Civ. P. 25(a), it was necessary for the district court to interpret O.C.G.A. § 15-9-31 which gives probate courts jurisdiction to grant administration of estates. Rule 25(a)(1) provides that "the court may order substitution of the proper parties" after the death of a party. The district court agreed with Carl Nolte Sohne that under Rule 25(a), a federal court has a duty to determine the propriety of the appointment of an administrator seeking to be substituted as the party

5

plaintiff.  *See Diehl v. United States*, 438 F.2d 705, 709 (5ᵗʰ Cir. 1971)[3] (explaining that if

the underlying appointment of a legal representative in state court is improper, then a Rule

25(a) motion for substitution should be denied).  Section 15-9-31 of the Georgia Code

provides:

> The judge of the probate court can grant administration only on the estate of a person who was:
>
> (1) A resident at the time of his death of the county where the application is made; or
>
> (2) A nonresident of the state, with *property* in the county where the application is made or with a *bona fide cause of action against some person therein*.

*Id.* (emphasis added).  Because Escanero was a nonresident of Georgia at the time of his

death, this case falls under § 15-9-31(2).  Thus, the central question in this case is as follows:

Under § 15-9-31(2), may a probate judge appoint an administrator based on 1) the existence

of an ongoing lawsuit brought by a foreign plaintiff against a foreign defendant in a Georgia

court, or 2) the presence of a case file in an attorney's office in Georgia?  The district court

answered this question in the negative.

### A.    "bona fide cause of action against some person therein"

---

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

We begin our analysis by addressing what we consider to be the Plaintiff's strongest argument for a finding that Grant was properly appointed administrator of Escareno's estate. The Plaintiff submits that the district court misinterpreted the second jurisdictional basis in § 15-9-31(2), which requires that the deceased possess "a bona fide cause of action against some person therein." Much of the confusion in this case relates to this ambiguous phrase. If this phrase means that the cause of action must be against a person located in the county, as Carl Nolte Sohne contends, then the appointment of Grant as administrator was improper because Escareno's lawsuit was not against a Fulton County defendant, but against a German company. On the other hand, if the Plaintiff is correct that this language means that the lawsuit merely has to be pending in the county, then Grant was properly appointed. No Georgia court has directly addressed the question of which interpretation of § 15-9-31(2) is correct.

Plaintiff's argument in support of interpreting this provision to require that a lawsuit be pending in a county involves the construction of another statute, O.C.G.A. § 15-9-32, which provides that "[w]hen a nonresident decedent has property or a cause of action in more than one county, letters of administration may be granted in any county in which such property or *cause of action is located*." § 15-9-32 (emphasis added). This statute permits appointment of an administrator in a county where a cause of action is pending. Plaintiff contends that this provision clarifies the legislature's intent that the phrase, "cause of action against some person therein," in § 15-9-31(2) refers to the location of the cause of action, not the location of the person who is the defendant in that cause of action.

7

In its order denying the first motion to substitute, the district court recognized that the statutory language of § 15-9-32 "is somewhat supportive" of the Plaintiff's proposed construction of the "against some person therein" language in § 15-9-31(2). *Escareno v. Noltina Crucible and Refractory Corp.*, 152 F.R.D. 661, 664 (N.D. Ga. 1993). The district court determined, however, that the Plaintiff's construction was not supported by the relevant case law construing § 15-9-31. *Id.*

In *Robbins v. National Bank of Georgia,* 246 S.E.2d 660 (Ga. 1978), the Georgia Supreme Court considered a challenge to the administration of a nonresident's probate estate in Georgia and upheld the administration. The party opposed to the administration argued that it was not enough that the nonresident decedent owned securities held by a trustee in Fulton County and had a pending claim against an estate located in Fulton County. *Id.* at 663. *Robbins* is distinguishable on the ground that the nonresident decedent in *Robbins* had a pending cause of action against a Fulton County defendant, while Escareno's lawsuit is against a foreign defendant. It is nonetheless possible to draw at least one relevant inference favoring Carl Nolte Sohne's position from the *Robbins* court's discussion of the predecessor to § 15-9-31.[4] The *Robbins* court specified that Fulton County was the situs of the estate being sued. This would not have been necessary if it were sufficient for the lawsuit to have been pending in Fulton County, and the court's mention of this fact supports Carl Nolte Sohne's side of the "against some person therein" dispute.

---

[4]The provision now codified at O.C.G.A. § 15-9-31 was formerly Civil Code 1910, § 4792 and Code 1933, § 24-1902. The statute's language has not changed.

However, some of the language in the *Robbins* opinion supports the Plaintiff's position that the existence of a pending cause of action in a county is sufficient to warrant administration of an estate under § 15-9-31(2). In addition to mentioning that the defendant in *Robbins* was a Fulton County defendant, the *Robbins* court stated that the claim brought against the estate was prosecuted in the courts of Fulton County. *Id.* at 663. The court went on to explain that "[c]ases can be conceived where there is no tangible estate, but where there is something to be done by an administrator which in contemplation of law may create an estate, such as suing for the death of a decedent." *Id.* The court stated that an administrator should be appointed in such cases. *Id.* Both the Plaintiff and Carl Nolte Sohne can find support for their conflicting positions in the *Robbins* opinion.

Another Georgia case, *McPhail v. Barnhill*, 156 S.E. 466 (Ga. Ct. App. 1931), contains support for Carl Nolte Sohne's contention that a cause of action must be against a resident of the county under § 15-9-31(2). Interpreting this provision, the *McPhail* court wrote that the probate court's jurisdiction depended upon ownership of property within the county "or the existence of a bona fide cause of action in favor of the deceased nonresident *against some person residing in the county.*" 156 S.E. at 467 (emphasis added). This language indicates that the court in *McPhail* read § 15-9-31(2) as requiring that the cause of action be brought against a resident of the county, consistent with the interpretation advocated by Carl Nolte Sohne. Significantly, however, this language is dicta because there was no contention in *McPhail* that the probate judge lacked jurisdiction to appoint an

9

administrator "by reason of there being no property in that county or bona fide cause of action against some person residing therein." *Id.*

Although *Robbins* and *McPhail* lend support to Carl Nolte Sohne's position, neither of these cases directly addressed the question of whether § 15-9-31(2) authorizes the appointment of an administrator of an estate based on the existence of a cause of action against a foreign defendant in a Georgia court. Some of the language in *Robbins* can also be read to support the Plaintiff's position. In addition, we see some merit in the Plaintiff's argument that the language of § 15-9-32 suggests that the Georgia legislature referred to the location of the cause of action in § 15-9-31(2) with the phrase, "against some person therein."

Because this case involves an unsettled question of Georgia law, we would rather certify the question of the proper interpretation of § 15-9-31(2) to the Georgia Supreme Court than speculate as to how the Georgia courts would resolve the issue. In some of our precedents we have said, "[w]here there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary *Erie* 'guesses' and to offer the state court the opportunity to interpret or change existing law." *Colonial Properties, Inc. v. Vogue Cleaners, Inc.*, 77 F.3d 384, 387 (11th Cir. 1996) (referring to *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)) (quoting *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 916-17 (11th Cir. 1995)). We underscore, however, the rule that certification of state law questions is a matter of discretion. *See Lehman Bros. v. Schein*, 416 U.S. 386, 390-91, 94 S.Ct. 1741, 1744 (1974) ("We do not

10

suggest that where there is doubt as to local law and where the certification procedure is available, resort to it is obligatory. . . . *Its use in a given case rests in the sound discretion of the federal court.*"  (emphasis added)).  Moreover, while this circuit traditionally has been less reluctant than others to certify questions of state law,[5] it nonetheless has been our practice to do so with restraint and only after the consideration of a number of factors:

> [C]ertification should never be automatic or unthinking.  `We use much judgment, restraint and discretion in certifying.  We do not abdicate.' . . . In determining whether to exercise our discretion in favor of certification, we consider many factors. The most important are the closeness of the question and the existence of sufficient sources of state law . . . to allow a principled rather than conjectural conclusion.  But also to be considered is the degree to which considerations of comity are relevant. . . . And we must also take into account practical limitations of the certification process. . . .

*State of Florida ex rel. Shevin v. Exxon Corp.,* 526 F.2d 266, 274 (5th Cir. 1976)(citation omitted).

We sometimes will decide a question of state law, even when there is doubt as to how a state court would resolve the issue.  *See Smigiel v. Aetna Casualty & Surety Co.*, 785 F.2d 922, 924-25 (11th Cir. 1986)(stating that "[a]lthough we are *Erie* bound, we may exercise an option to make an educated guess as to how the [state] courts would resolve this issue").  By

---

[5]See *Blue Cross and Blue Shield of Ala., Inc. v. Nielsen*, 116 F.3d 1406, 1413 (11th Circ. 1997) (noting that "[w]e, more than any other circuit, use [certification]") (citing Jona Goldschmidt, American Judicature Society, *Certification of Questions of Law: Federalism in Practice* 28 (1995)).

requiring federal courts to anticipate the decisions of state courts,[6] *Erie* jurisprudence contemplates that federal courts will in some cases be called upon to decide unsettled issues of state law. On many occasions this court has resolved difficult or uncertain questions of state law without recourse to certification.[7]

In addition, the state courts, like their federal counterparts, are busy institutions, with their own caseloads to manage. While we are fortunate that all three states within the Eleventh Circuit have established certification procedures, federal litigants have no right to insist upon certification, and this court will continue to exercise discretion and restraint in deciding to certify questions to state courts. In this case, however, all factors considered, we think certification is appropriate.

B.    "property in the county"

In addition to advocating that "against some person therein" refers to the location of the cause of action, not the party defendant, the Plaintiff contends that the lawsuit itself constitutes property in Fulton County for purposes of § 15-9-31(2). The Plaintiff cites O.C.G.A. § 44-12-20, which defines a chose in action as "personalty," arguing that as a chose in action, this lawsuit constitutes "property in the county" and is therefore a proper basis for the appointment of an administrator under § 15-9-31(2).

---

[6] *See, e.g., Green v. Amerada-Hess Co.*, 612 F.2d 212, 214 (5th Cir. 1980)("[W]e must . . . decide this issue as we believe a [state] court would decide it.").

[7] *See, e.g., Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1118 (11th Cir. 1990); *Smigiel,* 785 F.2d at 924-25 (11th Cir. 1986).

Contrary to the Plaintiff's contention, the fact that a chose in action is personalty under Georgia law supports a finding that the lawsuit is not property located in Georgia because the situs of personalty is the owner's domicile. In *League v. Churchill*, 137 S.E. 632, 632 (Ga. 1927), the Georgia Supreme Court stated that "it is generally admitted that personalty has no fixed legal situs. It follows the domicile of the owner." Under this rule, because Escareno's domicile was in Mexico at the time of his death, the situs of his interest in the lawsuit would be Mexico, not Georgia. It therefore appears that the district court was correct in its determination that the lawsuit, as personalty, was not property located in Fulton County. Although we do not intend to preclude the Georgia Supreme Court from reaching a different conclusion on this point of state law, we see little merit to the Plaintiff's argument that the lawsuit against Carl Nolte Sohne should be classified as property located in Fulton County for purposes of § 15-9-31(2).[8]

The Plaintiff also contends that the papers contained in Escareno's counsel's case file constitute property for purposes of § 15-9-31. The district court responded to this argument by stating that "[i]f the cause of action could not be probated, then the files that make up that

---

[8]The Plaintiff also argues that the instant litigation had an independent situs in Fulton County. The Plaintiff half-heartedly contends that this is sufficient for purposes of obtaining the appointment of an administrator, citing *Tweed v. Houghton*, 103 Ga.App. 57, 118 S.E.2d 496 (Ga. Ct. App. 1961). The plaintiff did not raise this argument before the district court in its motion to substitute Grant as a party, and the district court did not address this argument in its Order from which this appeal was taken. We have reviewed the *Tweed* case and observe that it did not deal with § 15-9-31. Moreover, the decision to allow appointment of an administrator over the estate of a non-resident decedent in *Tweed* was based on a contractual obligation, not the possession of a cause of action. *Id.* at 497-99. We leave it to the discretion of the Georgia Supreme Court whether to address this argument.

13

cause are likewise not property subject to probate, for they have no value aside from the value of the cause of action." *Escareno v. Noltina Crucible and Refractory Corp.*, 172 F.R.D. 522, 530 (N.D. Ga. 1997). Again, though we tend to agree with the district court's ruling on this point, we leave it to the Georgia Supreme Court to make the final determination as to whether a case file in an attorney's office constitutes "property in the county" for purposes of § 15-9-31(2).

## III.  QUESTION TO BE CERTIFIED

We respectfully certify the following question of law to the Georgia Supreme Court:

> Whether the appointment of Grant as administrator of Escareno's estate was proper under § 15-9-31(2) based upon either the pending cause of action in Fulton County against a foreign defendant or the presence of a case file in Escareno's counsel's office.

We do not intend for this statement of the question to limit the inquiry of the Georgia Supreme Court. The phrasing of a question certified to a state's highest court does not restrict that court's consideration of any issue it finds in the case. *See Colonial Properties, Inc.*, 77 F.3d at 387.

To assist the Georgia Supreme Court, we hereby order that the entire record in this case, together with the briefs of the parties, be transmitted herewith.

**QUESTION CERTIFIED.**