**LIQUIFIN AKTIENGESELLSCHAFT,**
Plaintiff,

v.

**Joseph P. BRENNAN, Individually, and as City Sheriff of the City of New York, and the City of New York, Defendants.**

**No. 74 Civ. 767 (JMC).**

United States District Court,
S. D. New York.

Oct. 29, 1974.

Donald J. Zoeller, New York City (Mudge, Rose, Guthrie & Alexander, John J. Witmeyer III, John B. Sherman and William P. Laino, New York City, of counsel), for plaintiff.

Edward J. Mallon, Philip Agree, Elliot Tunis, New York City (Adrian P. Burke, Corp. counsel, New York City), for defendant The City of New York.

Frederick Weinberger, New York City, for defendant Joseph P. Brennan.

## MEMORANDUM DECISION

CANNELLA, District Judge:

The defendants herein, Joseph P. Brennan (City Sheriff of the City of New York) and The City of New York, move this Court pursuant to Rule 12(b) of the Fed.R.Civ.P. to dismiss plaintiff's complaint, or in the alternative, to decline or postpone the exercise of jurisdiction over the instant matter. Three grounds for such relief are urged upon the Court: (1) that the doctrine of abstention so requires; (2) that a prior state court judgment collaterally estops plaintiff from bringing this action; and (3) that the plaintiff has failed to join an indispensable party. For the reasons set forth below, the Court finds defendants' challenges to be without merit and denies the motion.

This matter arises out of an action begun by the Ronson Corporation against Liquifin Aktiengesellschaft ("Liquifin"), in the Supreme Court of New York, New York County, on July 6, 1973 with the obtaining by Ronson of an *ex parte* order of attachment. The order of attachment was immediately delivered to the Sheriff of the City of New York, who thereupon levied on $1,500,000 of Liquifin's funds then on deposit with the Franklin National Bank by serving a copy of said order of attachment upon an officer of the Bank. As a result of the attachment order the Bank put a "freeze" on Liquifin's account.

On July 19, 1973, Liquifin, acting pursuant to New York Civil Practice Law and Rules § 6222, obtained an order discharging the attachment. This order provided that upon service of the order and payment to the Sheriff of "his statutory fees and expenses," the attached property would be released. On the same day, the Sheriff demanded that Liquifin pay to him statutory fees and expenses in the sum of $75,625, and conditionally released the attachment provided that:

[o]f the sum of $75,625, the Sheriff will hold $25,625 in escrow for three months either for substitution of that sum by a bond or the commencement of a proceeding to determine poundage as to the levy in excess of $1,000,000.

On September 19, 1973, Liquifin obtained an order removing the Ronson action to this Court, where it is presently pending before Judge Brieant (Ronson Corp. v. Liquifin Aktiengesellschaft and Liquigas SpA., Vincenzo Cazzaniga, 73 Civ. 4025 C.L.B.). On November 16, 1973 Liquifin paid to the Sheriff "with full reservation of all rights" the previously demanded sum of $75,625.

Having paid the Sheriff the amount demanded, Liquifin instituted the

**980**

present action against the Sheriff and The City of New York. Jurisdiction is based upon diversity of citizenship and 28 U.S.C. § 1343, the jurisdictional predicate of 42 U.S.C. § 1983. Plaintiff's amended complaint contains three counts. In Count 1, plaintiff alleges that the required payment of $75,625 was a taking of property without due process of law and an "unreasonable interference with and undue burden upon access" to the New York State Courts and therefore is violative of the Fourteenth Amendment to the United States Constitution and Article I, Section 6 of the New York State Constitution. Count 2 alleges that a proper reading of Section 8012(b)(3) of N.Y.C.P.L.R. limits the maximum fee which the Sheriff could demand to $50,000 and not $75,625. The final count of the complaint alleges that C.P.L.R. Section 8012(b)(1), which permits a higher sheriff's fee to be charged in the counties of the City of New York than elsewhere in the State, denies due process and equal protection in violation of the Fourteenth Amendment to the United State Constitution and Article I, Section 6 to the New York State Constitution.

### THE LAW

### ABSTENTION

Defendants ask this Court to exercise its "discretion to postpone the exercise of . . . jurisdiction pending the resolution of the matters at issue by the Courts of the State of New York. . . ." (Weinberger Affidavit at 1). This invitation to abstain is declined.

 As to Count 1 of plaintiff's complaint, attacking on due process grounds the constitutionality of New York's stat-

utory procedure for compensation of sheriffs, abstention would be an abnegation of this Court's responsibilities and not a reflection of our "scrupulous regard for the rightful independence of the state governments"[1] and strong desire to foster comity. As the Supreme Court said in Lake Carriers' Association v. MacMullan, 406 U.S. 498, 509, 92 S.Ct. 1749, 1756, 32 L.Ed. 257 (1972),

Abstention is a "judge-made doctrine . . ., first fashioned in 1941 in Railroad Commission v. Pullman Co., 312 U.S. 496, [61 S.Ct. 643, 85 L.Ed. 971] [that] sanctions . . . escape [from immediate decision] only in narrowly limited 'special circumstances,' Propper v. Clark, 337 U.S. 472, 492, [69 S.Ct. 1333, 93 L.Ed. 1480]," Zwickler v. Koota, 389 U.S. 241, 248, [88 S.Ct. 391, 395, 19 L.Ed. 2d 444] (1967), justifying "the delay and expense to which application of the abstention doctrine inevitably gives rise." England v. Medical Examiners, 375 U.S. 411, 418, 84 S.Ct. 461, 466, 11 L.Ed.2d 440 (1964).

There are, however, no "special circumstances" in this case and unlike the situation in Railroad Commission of Texas v. Pullman Co.,[2] a definitive ruling on the state law issue will not aid this Court in avoiding the constitutional issues raised in this complaint.

The "essential prerequisite"[3] for this *Pullman* type abstention, that the "state statute is susceptible of a construction by the state judiciary that would avoid or modify the necessity of reaching a federal constitutional question,"[4] is here missing. The decision, whether by this Court or by a state court, resolving the admitted ambiguity in C.P.L.R. §

1. R. R. Comm'n v. Pullman Co., 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941), quoting DiGiovanni v. Camden Ins. Ass'n, 296 U.S. 64, 73, 56 S.Ct. 1, 80 L.Ed. 47 (1935).

2. 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

3. Procunier v. Martinez, 416 U.S. 396, 402 94 S.Ct. 1800, 1806, 40 L.Ed.2d 224 (1974).

4. Kusper v. Pontikes, 414 U.S. 51, 54, 94 S. Ct. 303, 306, 38 L.Ed.2d 260 (1973).

8012(b)(3) [5] will neither eliminate nor modify the constitutional questions before this Court.[6] Plaintiff, relying on language in the statute which states that the Sheriff is entitled to the same poundage fee when an attachment is "vacated or set aside" as when the attachment is "discharged by order of the court", argues that the maximum amount upon which poundage should have been computed was $1,000,000. The Sheriff, on the other hand, points out that by its terms the $1,000,000 limitation applies only when the attachment is "vacated or set aside" and argues that the monetary limitation does not come into play when an attachment is discharged. The resolution of the instant motion does not require the Court to settle this dispute.[7] It seems clear, however, that while the plaintiff's reading of the statute will save him $25,000, he will still be required to pay the Sheriff the substantial sum of $50,000 and his due process challenge will therefore remain intact.

■ As to Count 2, plaintiff raises no constitutional issues, but argues that a proper reading of N.Y.C.P.L.R. 8012(b)(3) requires that the poundage fee be calculated as if the amount attached was $1,000,000 rather than $1,500,000. As discussed above, the resolution of this controversy will require the Court to construe the meaning of an ambiguous state statute; such a procedure, however, has historically been the proper and unavoidable function of a federal court sitting in alienage and diversity cases. While a case such as this might present an appropriate opportunity to utilize a certification statute,[8] New York does not have such a procedure, and as the Supreme Court has recently noted, in the absence of such a certification statute, "mere difficulty in ascertaining local law is no excuse for remitting the parties to a state tribunal for the start of another lawsuit,"[9] something more must be present to trigger abstention.

Where Congress creates a head of federal jurisdiction which entails a responsibility to adjudicate the claim on the basis of state law, viz., diversity of citizenship, as was true in Meredith v. Winter Haven, 320 U.S. 228, [64 S. Ct. 7, 88 L.Ed. 9], we hold that difficulties and complexities of state law

---

5. C.P.L.R. § 8012(b)(3):

Where a settlement is made, either before or after judgment, after a levy by virtue of an order of attachment, the sheriff is entitled to poundage upon the value of the property levied upon, not exceeding the sum at which the settlement is made. Where an order of attachment is vacated or set aside, the sheriff is entitled to poundage upon the value of the property levied upon, not exceeding the amount specified in the order of attachment, and the court may order the party at whose instance the order of attachment was granted to pay the same to the sheriff. Where an order of attachment is otherwise discharged by order of the court, the sheriff is entitled to the same poundage, to be paid by the party at whose instance the order of attachment is discharged, and the sheriff is entitled to retain the property levied upon until the poundage is paid. The maximum amount upon which poundage shall be computed, if such a settlement is made or the order of attachment is vacated or set aside, is one million dollars.

6. Compare the situation in Blouin v. Dembitz, 489 F.2d 488, 491–92 (2d Cir. 1973) where abstention was found to have been justified when the state statute had a construction which would obviate the need for a constitutional inquiry. See also, Perry v. Kelley, 378 F. Supp. 299, 300 (S.D.N.Y. 1974).

7. It should be noted that there are no reported cases construing this statute and that its legislative history is silent as to this ambiguity.

8. See Lehman Bros. v. Schein, 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974).

9. Id. at 390. But see United Services Life Ins. Co. v. Delaney, 328 F.2d 483 (5th Cir.), cert. denied, 377 U.S. 935, 84 S.Ct. 1335, 12 L.Ed.2d 298 (1964) (taking the position that abstention is proper due solely to the difficulty of the state law question). This approach has not been adopted by the Second Circuit and is rejected here. See the critical evaluation of the Delaney doctrine in Bednar, Abstention Under Delaney: A Current Appraisal, 49 Tex.L.Rev. 247 (1971).

are no reason for referral of the problem to the state court. . . .[10]

■ Although there are certain ill-defined instances in which abstention is the proper course to be followed in a diversity case, it is clear that none of these "narrow and exceptional circumstances"[11] are present here. Defendants' reliance upon B–W Acceptance Corp. v. Torgerson, 234 F.Supp. 214 (D. Mont. 1964) is misplaced. In that case the court was faced with the alleged unconstitutionality of a Montana statute under a provision of the Montana Constitution having no counterpart in the United States Constitution. In such a case, where the interpretation and application of an unclear state constitutional provision may very well be "the nub of the whole controversy,"[12] abstention is appropriate.[13] Here, however, the state constitutional provision allegedly infringed has a direct federal counterpart and the Court is not called upon to construe an ambiguous portion of New York's Constitution.

■ The state law issue presented in this case is not one of "vital concern"[14] to the State of New York, and this Court's construction of 8012(b)(3), whatever it may in the end be, will neither trench upon state prerogatives,[15] nor interfere with any complex state regulatory scheme.[16] Abstention is thus an inappropriate course of action.

■ As to Count 3, wherein plaintiff mounts his equal protection challenge, the statutory language providing for higher sheriff's fees in the City of New York than elsewhere in the state is clear and unambiguous. Neither party has suggested to the Court that the statute can be read so as to avoid reaching the equal protection challenge. There are, therefore, no grounds for abstention.

## COLLATERAL ESTOPPEL

■ The defendants contend that the State Supreme Court order discharging the attachment and the proceedings upon which said order was based, collaterally estop Liquifin from instituting the instant action. This argument is without merit. Although "it now appears well established that when a civil rights action is brought in federal court which presents the same issue as was decided in a prior state civil action, that prior state judgment may have a collateral estoppel (or *res judicata*) effect upon the federal suit,"[17] the issues of law presented in this action were not decided by the state court in the proceeding to discharge the attachment. Thus, the doctrine of collateral estoppel which operates *only* "[w]hen an issue of fact or law is actually litigated and determined

---

10. McNeese v. Bd. of Educ., 373 U.S. 668, 673 n. 5, 83 S.Ct. 1433, 1436, 10 L.Ed.2d 622 (1963). *Accord,* Middle Atlantic Utilities Co. v. S. M. W. Development Corp., 392 F. 2d 380, 386 (2d Cir. 1968) where the court said,

> If there is diversity of citizenship between the parties to the suit, Congress has authorized plaintiffs to choose a federal forum to try their suit. . . . The federal courts may not turn down legitimate suits merely because the state law is confused and complicated.

*See also* Royal School Laboratories, Inc. v. Watertown, 358 F.2d 813, 816 (2d Cir. 1966).

11. Ungar v. Mandell, 471 F.2d 1163, 1166 (2d Cir. 1972).

12. Reetz v. Bonzanich, 397 U.S. 82, 87, 90 S.Ct. 788, 790, 25 L.Ed.2d 68 (1970).

13. *See* Askew v. Hargrave, 401 U.S. 476, 478, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971).

14. Kaiser Steel Corp. v. W. S. Ranch Co., 391 U.S. 593, 594, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968) (Per Curiam).

15. *See* AFA Distrib. Co. v. Pearl Brewing Co., 470 F.2d 1210, 1214 (4th Cir. 1973) where the court's decision to abstain was influenced by the "peculiarly exclusive dominion of the states over the control of distribution and sale of alcoholic beverages." *See also* Bassler v. Arrowood, 500 F.2d 138, 142 (8th Cir. 1974).

16. *See* Sayers v. Forsyth Building Corp., 417 F.2d 65, 73 (5th Cir. 1969).

17. Mastracchio v. Ricci, 498 F.2d 1257, 1259 (1st Cir. 1974).

by a valid and final judgment, and the determination is essential to the judgment . . ."[18] cannot be applied here. There is nothing in this record, nor has defendant brought forward anything, which would indicate to this Court that the legal issues here presented were even mentioned in the state court proceeding much less either actually litigated and determined or necessary to the order to discharge the attachment. Thus, it would be both inappropriate and inequitable to hold that the plaintiff was collaterally estopped from presenting his constitutional arguments to this Court.

In Shapiro v. Loft, Inc.,[19] it was held that the fact of defendant's having previously discharged an attachment by filing a bond did not preclude him from later attacking the validity of the attachment in a motion to vacate. In characterizing the nature of a proceeding to discharge an attachment, the court said:

> Discharge assumes the legality of the attachment for the purpose of substituting security for the attached property and thus freeing the latter. The defendant by the discharge, however, does not necessarily admit that the res was properly or legally attached, *nor does he take the position that he will thereafter refrain from attacking the attachment.*[20]

Thus, this is not a case where a Federal District Court is being asked to sit in review of a state court determination because the litigant failed to properly seek appellate review in the state court system.[21]

Bolstering the conclusion that plaintiff is not collaterally estopped from bringing his constitutional claims before this Court is the recent decision in Lombard v. Board of Education.[22] There, the Second Circuit held that due to the uniquely supplementary nature of the remedy represented by 42 U.S.C. § 1983, traditional principles of *res judicata* and collateral estoppel are to be relaxed in civil rights actions. Although it is possible to limit this decision to cases involving procedural due process, such a narrow reading is not called for. Judge Gurfein's opinion is best read as holding that constitutional arguments which can be raised in 1983 actions will not lightly be found to have been waived due to a failure to raise them in a prior state proceeding.[23] As the Court said in *Lombard,*

> [P]laintiff [is not] required to make [his constitutional] attack . . . in an Article 78 proceeding in the state court, for section 1983 gives him an independent supplementary cause of action, and he may choose the federal court as the preferred forum for the assertion of constitutional claims . . . Indeed, if waiver is treated as a modality of exhaustion of remedy, the exhaustion, similarly, need not be of the state judicial remedy, but only of the administrative remedy.[24]

## FAILURE TO JOIN AN INDISPENSABLE PARTY

Defendant's final ground for urging this Court to dismiss the complaint is that an indispensable party, to wit, the Attorney General of the State

18. Restatement (Second) of Judgments § 68 (Tent.Draft 1973). *Accord,* Lombard v. Bd. of Educ., 502 F.2d 631, 637 (2d Cir. 1974); Mastracchio v. Ricci, 498 F.2d at 1260.

19. 142 Misc. 144, 254 N.Y.S. 197 (Sup.Ct. 1931).

20. *Id.* at 146, 254 N.Y.S. at 200.

21. *See, e. g.,* Rooker v. Fidelity Trust Co., 263 U.S. 413, 415–16, 41 S.Ct. 149, 68 L. Ed. 362 (1923); Tang v. App.Div., 487 F.2d 138, 141–42 (2d Cir. 1973), cert. denied, 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974).

22. Lombard v. Bd. of Educ., 502 F.2d 631, (2d Cir. 1974).

23. Thus one can accord the decision in Lombard with the circuit's earlier holding in Thistlethwaite v. New York, 497 F.2d 339 (2d Cir. 1974), in that the court in Thistlethwaite determined that plaintiff's constitutional contentions had been fully raised, litigated and decided in the prior state proceeding. *Cf.* Tang v. App. Div., 487 F.2d at 141–42.

24. 502 F.2d at 636. *See also* Sugar v. Curtis Circulation Co., 377 F.Supp. 1055, 1058–61 (S.D.N.Y.1974).

of New York, has not been joined. This contention is spurious. The presence of the Attorney General is certainly not required for a just adjudication of the instant action, and therefore by the terms of Rule 19 of the Federal Rules of Civil Procedure, dismissal is inappropriate. The Court will, however, treat this portion of defendant's motion as a "suggestion" made pursuant to N.Y.C.P.L.R. § 1012(b),[25] that the Court notify the Attorney General of plaintiff's challenge to the constitutionality of a state statute, and that he may intervene in this matter in support of the statute's constitutionality.

### CONCLUSION

For the above stated reasons, defendants' motion to dismiss the complaint is in all respects denied.

So ordered.

---

25. *See* 2 J. Weinstein, H. Korn and A. Miller, New York Civil Practice ¶ 1012.09 (1973).