Alejandro ESCARENO, Plaintiff,

v.

**NOLTINA CRUCIBLE AND REFRACTORY CORPORATION and Carl Nolte Söhne GmbH, Defendants.**

No. 1:92–CV–103–JEC.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 19, 1997.

Irwin W. Stolz, Jr., Seaton D. Purdom, Charles Neely Bowen, Gambrell & Stolz, Atlanta, GA, for Plaintiff.

Rex D. Smith, Jan Phillip Cohen, Chambers, Mabry, McClelland & Brooks, Atlanta, GA, Julia Bennett Jagger, Hawkins & Parnell, Atlanta, GA, Thomas B. Kenworthy, Morgan, Lewis & Bockius, Philadelphia, PA, for Defendants.

## *ORDER*

CARNES, District Judge.

This case is before the Court on plaintiff's Motion To Substitute [77], the case having been remanded by the Eleventh Circuit to allow plaintiff's counsel to file a second motion to substitute. *Escareno v. Carl Nolte Söhne GmbH & Co.*, 77 F.3d 407 (11th Cir. 1996). Defendant has filed an opposition to plaintiff's motion [78] and plaintiff has filed a reply to that opposition [81].

### I. Where We Are Now

When presented to the Court originally on counsel's [1] first motion to substitute himself as the party upon the death of his client, the plaintiff, the legal issues were unusual and applicable precedent was scant. Unfortunately, due to this Court's inability to decipher what exactly the Eleventh Circuit wishes this Court to do on remand, the matter has become more complicated and confusing. Specifically, the question whether a

---

1. "Counsel" refers to counsel for the plaintiff, Irwin W. Stolz, Jr.

particular individual can be appointed by a Georgia probate court to represent or administer an estate is one of Georgia law. The parties disagreed as to whether that law permitted counsel to be designated as an administrator of the estate. If the designation of a particular person as administrator were invalid, the latter would have no basis to argue that he should be substituted as the party plaintiff in this case. Upon submission of the original motion to substitute, this Court examined the albeit scant authority and decided that, although the issue was not altogether clear, defendant's position was more persuasive than plaintiff's and it so ruled.

On appeal, the Eleventh Circuit confessed its own inability to interpret Georgia law on this question and indicated that, because the Georgia probate court's appointment of plaintiff's counsel was, itself, based on a misapprehension of the facts underlying plaintiff's death,[2] plaintiff's counsel should be allowed to go back to probate court and obtain an order premised on the correct facts concerning the deceased's residency. Thereafter, plaintiff should be allowed to file a second motion to substitute with this Court.

As to the legal ramifications of the probate court's decision on a second application to appoint an administrator of plaintiff's estate, Judge Godbold, writing for the panel, noted:

> The courts of Georgia are the proper forum for unraveling the skeins of this case in the first instance. And even that cannot be done until the probate court acts on the correct facts. Orderly disposition of the case calls for the Georgia courts to act first.

77 F.3d at 412.

Judge Godbold further noted that the probate court should:

address the matter ... *construe the Georgia statutes if necessary, and consider its jurisdiction.* Whether the actions of that court will then be reviewable in the Georgia courts, and by whom, and on what record, are matters to be addressed by the Georgia *courts* in the first instance. Plaintiff should be given a reasonable time after Georgia *courts* act in which to file a new motion to substitute if plaintiff wishes to do so.

*Id.* (emphasis added)

Upon issuance of the mandate, the plaintiff went back to the Fulton County Probate Court and filed a second *ex parte* petition for the appointment of a representative for plaintiff's estate. This time, instead of asking that he, the plaintiff's attorney, be appointed as the representative, counsel requested that a Phillip Grant be so designated. The probate court issued an order to that effect. There is nothing in the submission to suggest that plaintiff's counsel indicated to the probate court the unique legal questions that inhered in this particular submission or directed the court to the questions that the Eleventh Circuit wished to be answered.[3] Accordingly, there is nothing to indicate that the probate court "construe[d] the Georgia statutes or consider[ed] its jurisdiction" to any greater extent than it would in any other routine *ex parte* request for the appointment of a representative.

This Court is unclear why the Eleventh Circuit did not certify the issue to the Georgia Supreme Court. Perhaps, it thought that, if aware of the true facts about the plaintiff's residency, the probate court would not appoint a representative and that further litigation on this issue could then be avoided. That, of course, did not occur as the probate court, unaware that it was supposed to be

---

2. In his petition requesting appointment as the temporary administrator of plaintiff's estate, counsel correctly indicated that plaintiff's residency at the time of his death was Mexico. Nevertheless, in its order appointing plaintiff's attorney as the temporary representative of plaintiff's estate, the probate court indicated its belief that the deceased was a resident of Fulton County at the time of his death. (Mot. For Substitution [53] at Exh. B and C.)

3. In fairness to plaintiff's counsel, the Court is not sure whether, under the language of the Eleventh Circuit opinion, the plaintiff was supposed to alert the probate court to these issues, for purposes of gaining an explicit ruling on them, and, if so, how plaintiff was supposed to initiate such a ruling.

unraveling skeins of a tough legal issue, not surprisingly, granted the *ex parte* petition.

Having now been appointed the representative, Mr. Grant seeks to be substituted as the party in the case. Although Grant's appointment avoids some of the perception problems inherent in having the plaintiff's counsel, without the consent of the heirs, act as the representative of the plaintiff's estate, it does not in any way diminish the force of defendant's continuing argument that, under Georgia law, an appointment of any representative for a nonresident's estate cannot be made under the circumstances of this case. Indeed, defendant has repeated those arguments in its opposition to the substitution of Grant as the plaintiff in this case.

In short, with a few additional complexities, we are back exactly where we started with this litigation: the plaintiff seeks to substitute a party and the defendant objects on the same ground that was previously sustained by this Court. The additional complexities arise out of an inability to discern what the Eleventh Circuit intended to be done upon the appointment of a representative by the probate court. The panel noted that it was unsure whether the action of the probate court would be reviewable in the Georgia courts and, if so, by whom and on what record, but that these "are matters to be addressed by the Georgia courts in the first instance." 77 F.3d at 412. This Court unfortunately holds no greater knowledge on these matters than did the Eleventh Circuit panel. Moreover, clearly not a Georgia court, this Court finds itself in the position of being the court "of first instance" to examine these issues, although the panel made clear its intention that the Georgia courts be the first arbiters of these questions. Unlike the Eleventh Circuit, this Court lacks the power to certify a question to a state supreme court. Accordingly, it must proceed to decide whether there is anything about this second substitution motion that would cause it to change its previous analysis of the legal issues. If not, the Court must then determine procedurally the next step to be taken to advance the litigation.

## II. How We Got Here

### A. *The Order Denying Plaintiff's Motion To Substitute*

Two months after plaintiff Escareno's death, his attorney learned of his client's death (Mot. [53] at 2) and filed a Suggestion of Death [51]. Thereafter, plaintiff's counsel filed an application with the Probate Court of Fulton County for appointment as a temporary administrator. Counsel had not been selected by the majority of heirs at law to represent the estate—plaintiff purportedly had a three year old son at the time of his death—but instead indicated on the application that he was a "creditor" of the deceased and that plaintiff died with a claim pending in the Northern District of Georgia. Presumably, counsel derived his creditor status from his work on the pending case, for which work he presumably had not been paid. The judge of the probate court issued an order appointing counsel as the temporary administrator of the estate for the "sole purpose of collecting and preserving the assets of the said deceased until permanent letters are granted" and then to deliver those assets to the person selected by the court to be the administrator of the estate. (Mot. [53] at Exh. B.) Thereafter, and within 90 days of the Suggestion of Death, counsel filed a motion with this Court to substitute himself as the party in the case.

Defendant opposed the substitution on three grounds: (1) a temporary administrator is not a proper party for substitution; (2) the appointment of this administrator by the probate court was not proper for several reasons; and (3) the motion for substitution failed to add the real part in interest, plaintiff's heir, who had not consented to the substitution of counsel. (*See* Def.'s Br. In Opposition to Mot. For Substitution [54].)

In his reply, filed on June 21, 1993, plaintiff's counsel disagreed with defendant's legal objections to the former's substitution as the party in the case. (*See* Pl.'s Resp. To Def.'s Reply to the Mot. For Substitution [60].) Counsel also indicated that, aware of plaintiff's son, counsel intended only to be the temporary administrator and that once he had ascertained who, under Mexican law, would be the boy's guardian, that guardian

could see that a permanent administrator would be appointed who would then become the "real party-plaintiff" in this litigation. Finally, counsel conceded that it was unusual for an attorney in a case to be substituted as the party, but noted that he requested this unusual appointment only to avoid dismissal under Rule 25(a), which allows 90 days to substitute upon a suggestion of death. ( [60] at 8.)

Defendant's third ground for denial of the motion to substitute—that the attorney-temporary administrator was not a "real party in interest"—triggered particularly thorny legal and ethical issues. Defendant argued that the purpose of requiring the "real party at interest" to substitute for the plaintiff is to protect the defendant from subsequent similar actions by a party actually entitled to recover and to insure that any judgment will have effect for *res judicata* purposes. According to defendant, a judgment in an action with plaintiff's counsel as the plaintiff would arguably have no preclusive effect against a later claim by the plaintiff's true heirs. Plaintiff's counsel responded, however, that the heir, Mr. Escareno's three year old son, was not the proper successor to the right of action, because the latter constituted personal property that passes to the personal representative of the deceased, who was the attorney for the plaintiff in the legal action.[4] Certainly, counsel, not the heirs, would be controlling litigation decisions.

The latter scenario triggered both practical and ethical issues. The terms of his appointment limited counsel's role to the "sole purpose of collecting and preserving the assets of the said deceased until permanent letters are granted" and then to deliver those assets to the person selected by the court to be the administrator of the estate. ( [53] at Exh. B.) The "assets" of an ongoing law suit are not fixed and thus cannot be collected until there is a settlement or judgment. As the "real party in interest," counsel would not just be collecting the money,

however, but also he would have been the person deciding how much to accept in settlement of the case and presumably how much of that to allocate to his fee.

The Court assumes that, at some point, plaintiff's child would be recognized as having. a right to receive some of the money received in a settlement or judgment. Certainly he would be the person with the greatest moral claim to the proceeds of the action. Yet, counsel, whose role as representative was based on his "creditor" status, could arguably have had a conflict in deciding whether to accept or pursue a particular settlement amount. The child might wish a larger settlement amount; a smaller amount might be satisfactory to cover counsel's anticipated profits from the suit. If the interests were to conflict, would counsel look after the best interests of the child or after his interests as a party who now has a substantial financial stake in the litigation?[5] Of course, in articulating these obvious ethical concerns, the Court does not suggest that this particular counsel would behave in any improper way. To the contrary, he is a person whose reputation with this court is of the highest caliber. Nevertheless, the potential conflicts in such a situation are obvious and, as counsel, himself, conceded, it was quite "unusual" to have the deceased plaintiff's attorney now become the "real party in interest."

Because it concluded that counsel's motion to substitute should be denied because his designation was improper under Georgia law, the undersigned did not have to address the above difficult issue nor did it have to determine whether a temporary administrator can act as a "legal representative" under Georgia law. Specifically, addressing defendant's argument that the appointment of counsel was invalid, the Court noted that, under F.R.CIV.P. 25(a)(1), the person seeking to be substituted must strictly comply with the requirement relating to becoming a "proper party" and cannot be a proper party if he is not the legal representative. Moreover, if

---

4. Counsel's position was a bit confusing because he also acknowledged that he expected the child to have a guardian appointed, who would then name or become the permanent administrator of the estate. (*See* [60] at 8.)

5. Of course, counsel who have a contingency fee arrangement are always interested in the financial outcome of case, but in the typical case, the client, not the counsel, makes decisions regarding settlement.

the underlying state appointment of the putative legal representative was improper, the motion for substitution should be denied. [Order [65] at 34.] The Court concluded that the pertinent Georgia statute allowed a probate court to grant administration of the estate of a nonresident only if that person had property in the county where application was made or had a "bona fide cause of action against some person therein." Mr. Escareno owned no property in Fulton County. Moreover, the defendant was not "a person therein"; the defendant was located in Germany. As to plaintiff's argument that it is only the "cause of action," not the defendant, who must be present in the county, Georgia law indicated that the situs of a cause of action attaches to the person of the plaintiff and follows him wherever he goes. Plaintiff was a resident of Mexico. Accordingly, the Court concluded that counsel was not the proper legal representative under Georgia law and that he could not substitute himself as the party plaintiff. The Court dismissed the action, as no proper party had been substituted, as required by F.R. Civ.P. 25. (Order [65].)

### B.  *Motion To Reconsider*

This Court denied the motion to substitute and dismissed the action on November 30, 1993; on December 14, 1993, counsel for plaintiff filed a motion for reconsideration. In addition to his original argument that O.C.G.A. § 15–9–31 requires only that a case be filed in a Georgia county, not that the defendant be in that county, plaintiff raised two new related arguments: that the papers and files maintained by plaintiff's counsel in Fulton County, Georgia constituted "property" in that county and provided a jurisdictional basis for the probate court and/or that a cause of action is, itself, "property" in the county where it is filed. Finally, counsel requested an additional sixty (60) days to locate a proper representative of plaintiff's estate for substitution. (*See* Pl.'s Mot. For Reconsideration [67].)

This Court denied the Motion to Reconsider on September 23, 1994. (Order [72].) The court noted that defendants had vigorously attacked jurisdiction in the initial round of pleadings and that plaintiff should have articulated his new argument at that time. Accordingly, the Court noted that it did not have to decide plaintiff's new substantive argument. The Court did note, however, that the only Georgia authority cited by either party indicated that the situs of a cause of action, as personal property of the holder, is at the domicile of the holder of the claim, which in this case would be Mexico. Therefore, the Court determined that plaintiff had provided no basis on which one could conclude that the "property" had a situs in Fulton County. (Order [72] at 6 n. 2.)

Finally, the Court addressed counsel's failure at any time in the litigation to substitute an appropriate party. Specifically, at the time he filed his motion to reconsider, on December 14, 1993, counsel had requested an additional sixty (60) days to find an appropriate person to act as a representative of plaintiff's and to be substituted in this case. The Court noted that in its original motion to substitute himself as the plaintiff, counsel had indicated his awareness of the irregularity of such an appointment and said that as soon as a guardian could be appointed for the heir, a permanent administrator would be appointed, who could be substituted as the plaintiff in the case. Six months passed from the motion to substitute and this Court's ruling and no guardian was ever proffered as a substitute. Thereafter, when he filed his motion for reconsideration in December of 1993, counsel had asked for 60 more days to find an appropriate substitute. This Court gave plaintiff far longer than sixty (60) days to find a guardian, by purposefully withholding its ruling on the motion to reconsider for nine months to allow plaintiff to come up with an appropriate substitute. Such a person never materialized. Twenty-one months having passed since plaintiff's death and nine months having elapsed since plaintiff had requested sixty (60) more days to finalize the guardianship of the heir, the Court concluded that counsel had received more than a reasonable period of time to find an appropriate substitute and that there was no indication that counsel's efforts would be any more successful in the future than they had been in the 21 months since plaintiff's death. Accordingly, concluding that litigation must

conclude at some point, the Court denied the motion for reconsideration.[6]

### C. *The Eleventh Circuit Opinion*

Plaintiff appealed this Court's order and denial of the motion to reconsider. The Eleventh Circuit vacated the dismissal and remanded. As noted *supra*, it held that the question whether counsel's appointment was a proper and legal one was a question of Georgia law and that, given the complexities and uncertainties, it was unsure how to resolve the "sunburst of questions" and "panoply of problems" that emerged from this unusual factual situation. 77 F.3d at 411. Moreover, it noted that the probate court had obviously made an error of fact in setting out the residency of the deceased. The panel was uncertain what action the probate court might have taken had it relied on the correct facts concerning plaintiff's residency. *Id.* In short, as noted, the panel concluded:

> The courts of Georgia are the proper forum for unraveling the skeins of this case in the first instance. And even that cannot be done until the probate court acts on the correct facts. Orderly disposition of this case calls for the Georgia courts to act first.

*Id.* at 412. Accordingly, the panel remanded the case back to this Court directing it to allow plaintiff a reasonable time in which to present again to a Georgia probate court the matter of appointment of an administrator or such representative as may be appropriate under Georgia law,

> at which time the probate court can address the matter ... construe the Georgia statues if necessary, and consider its jurisdiction. Whether the actions of that court will then be reviewable in the Georgia courts, and by whom, and on what record, are matters to be addressed by the Georgia courts in the first instances. Plaintiff should be given a reasonable time after Georgia courts act in which to file a new motion to substitute if plaintiff wishes to do so.

*Id.*

## III. How Can We Get Somewhere Else?

### A. *Second Motion To Substitute*

■ After the issuance of the Eleventh Circuit opinion, plaintiff went back to the Georgia probate court and filed a second petition for the appointment of a representative for the estate of Mr. Escareno. This time, however, counsel did not attempt to have himself named as the representative nor did he seek the appointment of a temporary administrator; instead, a petition was filed to have a Philip Grant appointed as the permanent administrator. The second petition also differed from the first in that it indicated that the majority of the heirs had selected Mr. Grant; the first petition had indicated that counsel's basis for being appointed administrator was his status as a "creditor" of the deceased. (*See* Mot. For Substitution [77].) The probate court issued an order appointing Mr. Grant as the permanent administrator of the plaintiff's estate.

This second petition was, like the first, filed *ex parte*.[7] Moreover, as noted *supra*, there is no indication that the probate court was aware that it was dealing with anything out of the ordinary and certainly no suggestion in its order that it had considered, or even been aware of, the myriad of jurisdic-

---

6. The Order noted:

The court is sympathetic toward plaintiff in the apparent difficulties he has had in trying to arrange an appropriate substitute plaintiff and would have permitted any reasonable extension, had such a motion been made. ([72] at 10–11.) and

If at the time of filing the motion to reconsider, plaintiff had indicated that he had identified a proper substitute and obtained that substitute's consent to becoming a party, the Court would have strained mightily to permit the substitution. Indeed, if at any time during the pendency of this Motion to Reconsider, the plaintiff had indicated that the had effected the appointment of an appropriate guardian and was prepared to substitute that person as the party plaintiff, the Court would have considered such a motion. ([72] at 9–10).

7. Counsel argues that the petition was not *ex parte* because of the allegation therein that the heirs had consented to Grant's appointment. The Court uses the term "ex parte" to mean that defendant was not represented at the proceeding and was thus not able to focus the probate court on those issues that so troubled the Eleventh Circuit.

tional and legal issues that the Eleventh Circuit panel had wanted the Georgia courts to address.

After obtaining this appointment of a permanent administrator, plaintiff's counsel filed a second motion to substitute, this time seeking to substitute Mr. Grant as the plaintiff in the action. (*See* Mot. For Substitution [77].) Defendant objected, on several grounds. In addition to noting that the papers appointing Mr Grant were irregular, defendant[8] again objected to the propriety of this type of appointment. First, defendant noted that in ruling on a motion for substitution pursuant to F.R. CIV.P.25(a), the federal court has a duty to determine the propriety of the appointment of an administrator seeking to be substituted as the party plaintiff. Moreover, a party not properly empowered as a representative of the estate does not have the capacity to sue and is not a "proper party." Again, defendant argues that this second appointment was improper and "shares all of the infirmities" that prompted the first denial of the motion to substitute. Specifically, defendant argues that a Georgia probate court can appoint an administrator upon the estate of a nonresident only if the latter has property within the county or the existence of a bona fide cause of action in favor of the deceased against some person residing in the county. As to the latter element, defendant correctly notes that defendant does not, in any sense, reside in Fulton County. As to the cause of action constituting property in Fulton County, defendant agrees with plaintiff that a cause of action is personal property. Defendant cites Georgia law to the effect that the situs of personalty is the domicile of the owner, which in this case would be Mexico. Accordingly, defendant argues that, for the very same reasons that the first motion to substitute was denied. this second motion should likewise be declined.

In reply, plaintiff does not offer any new answers to defendant's substantive objectives, but instead repeatedly argues that the Eleventh Circuit has indicated that this

Court would be committing error were it sustain defendant's objections and again dismiss the motion to substitute. The Court does not understand the basis of plaintiff's argument. Had the Eleventh Circuit agreed with plaintiff in his argument that the motion to substitute should have been granted, it could have readily reversed this Court's order denying the motion and the action would have proceeded. Had the panel concluded that the probate judge's decision to appoint an administrator been the final word on the matter, even if in contravention of Georgia law, it could have said that. It did not. The panel never opined whether this court, which had no choice but to resolve the issue, was correct or incorrect in its resolution of the central question whether the appointment of the temporary administrator was proper under Georgia law. The panel identified several intriguing questions, but, contrary to plaintiff's argument, hazarded no opinion as to how to answer those questions. The panel was candid in its admission that it did not know how to resolve the legal issues in this case and was emphatic in its desire to have the Georgia courts lead the way. That has not occurred and largely it has not occurred because, notwithstanding the panel's desire for guidance from the Georgia courts, the panel did not certify the question.

Instead a second *ex parte* petition was filed and granted by a probate court that went through none of the analysis envisioned by the Eleventh Circuit. Further, although a different person's name was submitted for the administrator's position and although the probate court was aware of the deceased's non-residency status, the legal issues already decided by this court have not changed one whit. The Court has already taken its best shot at resolving those issues and no new cases have been cited to cause it to believe that it should modify its previously held opinion as to the merits of the question. In short, while the Georgia Supreme Court has the power to adopt an interpretation of Geor-

---

8. Defendant noted that the final order purporting to appoint Mr. Grant is unsigned, the application indicated both a waiver of citation and the consent of the heirs to a waiver of bond, when only one could properly be checked, and the absence

of any indication that a bond had been given. (*See* Def.'s Br. [78] at 5 n. 3.) In a later pleading. the plaintiff disputed these arguments. (Pl.'s Reply [81].)

gia law consistent with that proffered by plaintiff, this Court cannot do so and, at the same time, follow what it believes to be the guiding, albeit scant, authority.

■ Two matters do, however, need to be clarified. As noted, in his motion for reconsideration, plaintiff's counsel had introduced a new argument not raised during the litigation on the motion to substitute: specifically, that the cause of action held by plaintiff prior to his death constituted "property" that could be the subject of probate in Georgia and, as a related argument, that the files and papers concerning that cause of action, which files were stored in his counsel's office in Fulton County, likewise constituted property. In its order denying reconsideration, this Court had noted that this argument should have been raised in the litigation on the motion to substitute and was untimely raised in a motion to reconsider. This Court did, however, go on to state that the only authority cited by either party indicated that plaintiff's argument was incorrect on the merits, in that a cause of action is personal property whose situs follows the domicile of the owner of the property, which was Mexico, not Georgia. Accordingly, the Court concluded that plaintiff's new argument was without merit.[9]

Plaintiff argues in his present Motion To Substitute that the Eleventh Circuit panel opinion "expresses disagreement with the view taken by the Court as to the proper situs for the administration of the estate" and quotes from footnote 2 of that panel opinion. In that footnote, however, rather than disagree with this Court's alternative ruling in its own note 2—that even if timely made, plaintiff's new argument supporting jurisdiction was without merit—the panel appeared not to have been aware that this Court had so concluded. Not aware that this Court had already expressed its opinion on the issue, the panel could hardly be said to be disagreeing with that opinion. Again, had the panel disagreed with that ruling or held a firm opinion of its own as to the merits of this issue, it could have said so, it did not.

So, this Court infers that this issue is another one of those matters that the panel wishes to have examined by the Georgia courts.

■ Lest there be any further misunderstanding, the Court explicitly rules based on the authority cited in its order denying reconsideration and in defendant's response to the second motion to substitute that a cause of action is personalty, that the situs of personalty follows the owner of the personalty and is controlled by the domicile of that owner, which here was in Mexico. Plaintiff has cited nothing to persuade one to reach a contrary conclusion. If the cause of action could not be probated. then the files that make up that cause are likewise not property subject to probate, for they have no value aside from the value of the cause of action.

Second, plaintiff argues that the Eleventh Circuit "appears to have approved one of plaintiff's arguments" [that] "if defendant's interpretation ... were adopted ... no probate court in Georgia would have jurisdiction to appoint an administrator of the estate of one like Escareno who filed suit and thereafter left the state, leaving no property in the county.'" (Pl.'s Reply [81] at 6 n. 2.) This Court infers the panel's cited reference to be nothing more than a description of plaintiff's argument; indeed, the recitation in the opinion was in the same section where the panel recited all of plaintiff's arguments. Again, if the panel had accepted plaintiff's argument, it could have reversed this Court's order and allowed the motion to substitute to proceed with plaintiff's counsel as the real party in interest. It did not do so.

■ Moreover, this argument, itself, is beside the point. The purpose behind Rule 25's provision regarding substitution when the party plaintiff has died is not to give the most expansive interpretation to arcane provisions of a state's probate laws; instead, it is to insure that the real party in interest is substituted in order that only those deserving of the proceeds of any judgment shall receive that judgment and to protect a defendant who has gone through the expense of

9.  The Court stated:
    Thus, assuming plaintiff's argument that a cause of action constituted personal property under Georgia law is correct, plaintiff has provided no basis upon which this Court could

    conclude that such property had a situs in Fulton County at the time of plaintiff's death under the undisputed facts in this case.
    (order [72] at 6 n. 2.)

litigation by insuring that any judgment will have preclusive effect as to other heirs who might later claim that they were the real parties in interest. Plaintiff purportedly left a young child who likely would benefit greatly from any damages that might be owing plaintiff. Obviously, a rule that would prevent that child from joining in a suit seeking such damages would be a troubling and seemingly unfair rule. Yet, no one in this case, including plaintiff's counsel, has ever argued that O.C.G.A. § 15–9–31 is the only method available to allow the child to participate in the suit. Rather, O.C.G.A. § 15–9–31 was the only means available to allow plaintiff's counsel to participate as the party in the case. Defendant has acknowledged that there would no impediment to substitution of an administrator of the deceased's estate, properly appointed by the appropriate court in the country of his domicile, and has conceded that under Georgia law a foreign administrator has the right to bring suit under Georgia law. (Def.'s Resp. [78] at 7.) Indeed, throughout this litigation, plaintiffs counsel has acknowledged how unusual were the procedural steps he has taken and his intention to have a guardian appointed for the child who could become the permanent administrator. During the six months when the original motion to substitute was before the Court, however, no guardian was ever obtained. After the Court denied the original motion to substitute, counsel requested that he be given sixty (60) days to find a guardian for the child in Mexico and to move to substitute that guardian as the party. The Court held up its ruling for not 60 days, but for over nine months, but still no guardian was ever appointed. The Eleventh Circuit gave plaintiff another bite at the substitution apple and plaintiff could have successfully had a guardian move to substitute himself at this remand stage of the proceedings. He has not. Notwithstanding the repeated statement by counsel that such a guardian would

be appointed, counsel has never offered any explanation why this has not been done. Plaintiff is aware that such a step would likely remedy all procedural problems here and make unnecessary a ruling on the esoteric issues identified by the Eleventh Circuit. That he has not done so and has not explained why he has not done so obviously triggers concerns about the regularity of the substitution procedure being invoked: specifically, whether it would adequately protect the interests of the child, assuming that he is the heir of the plaintiff, and whether it would have a preclusive effect for the defendant in fending off challenges by other putative heirs.[10]

This analysis is more than a technical exercise. Whenever an attorney argues for construction of a substitution rule that would give the attorney greater rights and protections than the heirs of the deceased client, it is appropriate to scrutinize carefully such an interpretation. That is so even where the particular lawyer is, as here, highly respected by this and other courts, because such a construction would then apply to all lawyers, including those in whom the court might place less trust to behave in a manner that adequately protects the heirs.

In short, plaintiff having offered no new substantive argument why this Court's·first decision regarding substitution was incorrect and the Court having found that most of the same impediments to that first motion inhere in the second motion, the Court **DENIES** this second motion to dismiss.

### B. *Does dismissal follow denial of the second motion to substitute?*

■ Having denied the motion, two factors suggest that the Court should, likewise, dismiss the case, as well. First, the Eleventh Circuit panel clearly wanted the Georgia courts to decide the legal issues concerning the appropriateness of the appointment of

10. The second petition indicates that the heirs have consented to the appointment of Mr. Grant as an administrator. On page 3 of the application, which is captioned as "Request For Waiver Of Citation or Consent Of Heirs To Waiver Of Bond And/Or Grant Of Certain Powers", the blank for "Printed Name" is completed by typewritten print as follows: "Alejandro Escareno, Jr., a minor child, by Nohemi Martine Rocha, his mother and next friend, and in the exercise of the

paternal authority." Under the blank for signature, in ink, is the printed name, "M Nohemi Martinez." (There is another letter after the "M" that the Court cannot decipher. Further, while the word "Martinez" is clearly printed, the word "Nohemi" contains *both* cursive and block printing). ([81]. Exh. A, at 3) Whether the above is sufficient to protect defendant from a later claim by the heirs that they have not consented is uncertain to this court.

the administrator under the Georgia statute. A dismissal will get this case back to the Eleventh Circuit, which new panel can either decide these issues or can certify the case to the Georgia Supreme Court. Second, dismissal appears to be the only option for the Court at this juncture, although a part of Judge Godbold's opinion makes even that decision problematic. Specifically, the panel indicated that this Court incorrectly "conflated" the period of time allowed to file a motion to substitute and the time allowed to consummate such a motion. According to the panel, as long as plaintiff asked within the 90 days to substitute another party, which he did, he was not required to actually substitute a proper party within the ninety (90) days. Presumably, the panel meant that after the Court denied the motion to substitute, it should have given plaintiff more time to find a proper substitute. In fact, however, although it did not issue an order explicitly giving plaintiff more time, the court effectively did just that. In his motion to reconsider, plaintiff indicated that he was working at that time to obtain a guardian for the heir and he asked for only 60 more days to obtain appointment of that guardian and to substitute him as the real party in interest. The Court gave him more than sixty (60) days, holding its ruling on the motion to reconsider in abeyance for 280 days in order to allow plaintiff time to find a guardian. None was ever presented to the Court. Nor has plaintiff argued that the Court's failure to advise plaintiff explicitly that it was allowing him additional time caused him not to take steps to obtain the guardian. Indeed, plaintiff has had nine months since issuance of the Eleventh Circuit mandate and still has obtained no guardian.

Nevertheless, the Eleventh Circuit opinion could be read as holding that whenever a plaintiff's motion to substitute has been denied, the court should give that plaintiff an additional period of time to obtain an appropriate substitute; the panel does not indicate how many times this exercise may be repeated. The Court concludes that such a step would be futile at this point, however, and would only delay further the already slow progress of this litigation. The Court does not know why it is so, but it is clear that counsel is not going to substitute a guardian for the putative heir as the real party in interest. He has had four years to do so. Accordingly, the Court sees no other option but to dismiss the action again.

If the Eleventh Circuit decides that this Court has erred in its substantive ruling on the substitution motion,[11] the action will proceed upon remand to the next appropriate step in the litigation. If the Eleventh Circuit decides that the motion to substitute should have been denied, it will then have to determine whether it is appropriate to allow plaintiff's counsel to file a third motion to substitute.

## IV. CONCLUSION

For all the above reasons, the Court **DENIES** the second motion to substitute [77] and **DISMISSES** the action.

---

11. It is not clear that a decision by the Georgia Supreme Court that appointment of an administrator under O.C.G.A. § 15–9–31 was proper will necessarily mean that the motion to substitute should be granted, as defendant appears not to have abandoned his argument that any such administrator is not the real party in interest for purpose of the federal rule allowing substitution.