*262 Justice Kennedy,
with whom Justice Thomas joins, concurring.
Ex parte Young, 209 U. S. 123 (1908), recognized a narrow limitation on state sovereign immunity, permitting railroad stockholders to enjoin enforcement of unconstitutional rate regulations. That negative injunction was nothing more than the pre-emptive assertion in equity of a defense that would otherwise have been available in the State’s enforcement proceedings at law. Id., at 165-166; see also Harrison, Ex Parte Young, 60 Stan. L. Rev. 989, 997-999 (2008).
The Court has expanded the Young exception far beyond its original office in order “to vindicate the federal interest in assuring the supremacy of [federal] law,” Green v. Mansour, 474 U. S. 64,68 (1985), but not without careful attention in each case to the sovereign interests of the State. See Verizon Md. Inc. v. Public Serv. Comrrin of Md., 535 U. S. 635, 649 (2002) (Kennedy, J., concurring). In Edelman v. Jordan, 415 U. S. 651 (1974), for example, the Court applied the exception to an affirmative prospective order but not to equitable restitution, for the latter was too similar to an award of damages against the State. Id., at 668; see Pennhurst State School and Hospital v. Halderman, 465 U. S. 89, 103 (1984) (“Under the theory of Young, such a suit [for restitution] would not be one against the State since the federal-law allegation would strip the state officer of his official authority. Nevertheless, retroactive relief was barred by the Eleventh Amendment”). And Pennhurst declined to extend Young to suits alleging a state-law violation, for without the need to ensure the supremacy of federal law there was no justification for restricting state sovereignty. 465 U. S., at 105-106.
The “straightforward inquiry” of Verizon Md. derives from Edelman and Pennhurst, both of which defined important limits on Young in order to respect state sovereignty while still adhering to principles necessary to implement the Supremacy Clause. As a result, Verizon Md. incorporates *263 the very balancing it might at first seem to reject. Verizon Md. itself was an easy case, for it involved the same kind of preenforcement assertion of a defense that was at issue in Young. But when Young’s application is explored in novel contexts, as in Idaho v. Coeur d’Alene Tribe of Idaho, 521 U. S. 261 (1997), and also in this case, the inquiry “proves more complex,” Verizon Md., supra, at 648 (Kennedy, J., concurring).
In this case, in my view, the Virginia Office for Protection and Advocacy (VOPA) may rely on Young, despite the somewhat striking novelty of permitting a state agency to sue officials of the same State in federal court. In the posture of the case as it comes before the Court, it must be assumed that VOPA has a federal right to the records it seeks, and so the extension of Young would vindicate the Supremacy Clause. To be balanced against this important interest is the need to preserve “the dignity and respect afforded a State, which the immunity is designed to protect.” Coeur d’Alene, supra, at 268. Permitting a state agency like VOPA to sue officials of the same State does implicate the State’s important sovereign interest in using its own courts to control the distribution of power among its own agents. But the affront to the State’s dignity is diminished to some extent when it is noted that if the State had elected the alternative course of designating a private protection and advocacy system it then would have avoided any risk of internal conflict while still participating in the federal program. The availability of that alternative course does not, in my view, weigh much in favor of the validity of the underlying federal scheme, but the only question here is the reach of the Young exception.
Virginia’s concern that the holding here upsets the federal balance is farther mitigated by the various protections built into the structure of federal litigation to ensure that state officials do not too often call upon the federal courts to resolve their intramural disputes.
*264 First, and most important, state law must authorize an agency or official to sue another arm of the State. If States do not wish to see their internal conflicts aired in federal court, they need not empower their officers or agencies to sue one another in a federal forum. And if state officers are not by state law empowered to sue, they may invoke federal jurisdiction only in their personal capacities.
Second, to the extent there is some doubt under state law as to an officer’s or agency’s power to sue, or any other state-law issue that may be dispositive, federal courts should abstain under Railroad Comm’n of Tex. v. Pullman Co., 312 U. S. 496 (1941). Pullman recognizes the importance of state sovereignty by limiting federal judicial intervention in state affairs to cases where intervention is necessary. If an open question of state law would resolve a dispute, then federal courts may wait for the resolution of the state-law issue before adjudicating the merits. Likewise, certification of questions of state law to the state courts may pretermit an otherwise sensitive federal controversy. Lehman Brothers v. Schein, 416 U. S. 386, 391 (1974) (Certification “helps build a cooperative judicial federalism”).
Finally, federal law does not often create rights for state officials or agencies to assert against other arms of the State. True, officials may assert that their personal federal rights are violated by unlawful state action, for example where the State engages in discriminatory employment practices. But the statutory framework in the case now before the Court is unusual in that it vests a state agency itself with federal rights against the State. Statutes tend to protect the rights of individuals, not officers or agencies, and the Constitution’s rights-creating Clauses protect persons rather than officers. Because the Young exception is available only to those who assert federal violations, the paucity of federal rights vested in government officials makes the scope of the holding here a narrow one.
*265 All this is simply to underscore that the program at issue may present constitutional questions but that the parties do not raise them in this litigation. Virginia does not argue, for example, that Congress exceeded its spending power under Article I, §8, by forcing a state that wishes to designate a public agency as its advoeacy system to allow intramural suits like the instant one or by requiring that the agency be structured as Congress directs. E. g., 42 U. S. C. § 15043(a) (2)(G) (system must “be independent of any agency that provides treatment, services, or habilitation to individuals with developmental disabilities”); § 15044(a)(2) (“[N]ot more than [1]k of the members of the governing board may be appointed by the chief executive officer of the State”). Young — a court-made doctrine based on convenience, fiction, or both— neither implicates nor subsumes these more fundamental concerns regarding the excessive exercise of federal power. The Court should be most cautious before deciding cases that might later lead to a general principle that the National Government can condition receipt of funds on the State’s agreement to make far-reaching changes with respect to its governmental structure or its basic policies of governance in matters within its special competence. Assuming, as the Court must, that the statutes here are constitutional, the narrow question is whether VOPA may rely on Young to avoid the sovereign immunity bar.
One might doubt whether the constitutional question may be so severed from the Young analysis. The Court wields Young in the name of the Supremacy Clause only to vindicate important federal rights. Perhaps this Court should not extend the fiction in the name of claims that may rest on unconstitutional foundations. This concern is misplaced. The canon of constitutional avoidance directs courts to prefer the interpretation of a statute that preserves its validity, but the specter of a statute’s unconstitutionality cannot be permitted to distort the antecedent question of jurisdiction. Courts *266 interpret and evaluate a statute only after confirming their authority to adjudicate the ease before them. To decline to adjudicate a federal right for fear of its potential unconstitutionality is in effect to invalidate the right in the quest to save it. The Court should not permit the commission of acts that violate a federal right on the mere suspicion that Congress acted beyond its authority. Because the suit must be assumed to vindicate the Supremacy Clause and poses no serious affront to state sovereignty in light of the options available to the State under the program, it may proceed.
With these observations, I join the Court’s opinion.

 Ex parte Young also rests on the “well-recognized irony that an official’s unconstitutional conduct constitutes state action under the Fourteenth Amendment but not the Eleventh Amendment.” Pennhurst State School and Hospital v. Halderman, 465 U. S. 89, 105 (1984) (internal quotation marks omitted).